ELBERON BATHING CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY AND ELBERON BATHING CLUB, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-RESPONDENTS, v. AMBASSADOR INSURANCE CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued February 22, 1978—Decided June 8, 1978.

(1)

2

*Mr. Joel N. Werbel* argued the cause for appellant (*Messrs. Methfessel and Werbel,* attorneys).

*Mr. Philip Lindeman, II,* argued the cause for respondents (*Messrs. Hellring, Lindeman, Landau and Siegal,* attorneys).

The opinion of the court was delivered by

CONFORD, P. J. A. D. (temporarily assigned). The principal question on this appeal concerns the valuation methods to be used in ascertaining the "actual cash value" of a partial loss under the Standard Form Fire Insurance Policy, *N. J. S. A.* 17:36-5.15 *et seq.* We are also required to determine whether failure to apply the appropriate standard is sufficient cause to set aside an appraisal award. The appeal arises in the context of a judgment in the Law Division in favor of the insured plaintiffs in the amount of $52,000 for excess coverage based on a $77,000 appraisement minus $25,000 primary coverage (on another policy) for a loss due to fire. The Appellate Division affirmed in an unreported opinion.

Defendant, Ambassador Insurance Company, issued a fire insurance policy to plaintiffs, Elberon Bathing Co., Inc. and Elberon Bathing Club, to indemnify them against loss by fire to club facilities and contents situated in Long Branch. The $125,000 policy represented excess coverage over a

$25,000 primary policy issued plaintiffs by Great Southwest Fire Insurance Company.

On January 8, 1975, while the policy was in effect, plaintiffs' bathing club was damaged by fire to an amount "greatly in excess of $25,000." Great Southwest promptly paid Elberon the $25,000. However, plaintiffs and defendant were unable to adjust plaintiffs' covered loss under the excess policy. Pursuant to the terms of the policy and an "agreement for submission to appraisers," plaintiffs and defendant each appointed an appraiser. The appraisers were, in turn, to select a disinterested umpire. However, they were unable to reach agreement thereon. Plaintiffs then filed a complaint and an order to show cause requesting the court to appoint an umpire pursuant to the terms of the policy.[1] The court appointed an umpire.

Shortly thereafter the appraisers and umpire went to inspect the insured premises which had already been repaired. According to affidavits of the umpire and defendant's appraiser, the umpire and plaintiffs' appraiser believed that their role was merely to determine the replacement cost of the damaged property. The umpire and plaintiffs' appraiser determined the actual cash value of the entire property to be $180,000 and the amount of fire loss to the property to total $77,000. This consisted of $8,500 for damage to personal property and $68,500 for pure replacement cost of the realty destroyed. Defendant's appraiser refused to sign the award.

Plaintiffs sought entry of judgment on the appraisement. Defendant answered, denying the finality of the award on the basis of its contention that the umpire had not heard all the evidence nor considered all matters submitted to him. It further disclaimed liability because of Elberon's

---

[1]The complaint requested appointment of an umpire "in accordance with the provisions of *N. J. S. A.* 2A:24–5," the Arbitration and Award Act. The appropriate statute governing the appointment of the umpire under a fire policy is *N. J. S. A.* 17:36–5.20.

alleged fraud in submitting a claim which it knew was substantially in excess of the actual cost to it to repair the damage. Defendant demanded that the award be vacated, and requested a jury trial on all the issues. In addition, defendant separately sought discovery of various "loss estimates" prepared by plaintiffs' appraiser and gave notice, pursuant to the policy, of defendant's desire to examine plaintiffs' documents and representatives.

The trial judge heard oral argument and reviewed the pleadings and affidavits. He stated that the appraisers could properly determine that replacement cost was the appropriate measure of the actual loss recoverable under the policy. He also found that there was no manifest mistake justifying setting aside the award. After deduction for the primary insurance coverage judgment was entered for plaintiff for $52,000. The Appellate Division, agreeing with the trial judge that under the appropriate narrow standard of review "the facts in the case do not dictate a basis for vacating the award * * *," affirmed. We granted certification. 74 *N. J.* 284 (1977).

I

Defendant argues that an award based on replacement cost without deduction for depreciation contravenes the measure of recovery provided for in the policy, that being "actual cash value." We agree.

*N. J. S. A.* 17:36–5.15 *et seq.* regulates the subject of fire insurance. As required by *N. J. S. A.* 17:36–5.19, the policy before us insured Elberon "* * * to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality * * *." This appeal calls for a determination of the meaning of "actual cash value." That phrase is also found in the appraisal provision of the Standard Form Policy which conforms to the statute.

In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the State in which the property covered is located. *The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item;* and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall *determine the amount of actual cash value and loss.* \* \* \* (emphasis added)

*N. J. S. A.* 17:36–5.20

The appraisal award here under review purported to follow the stated procedure.

█ A review of the record indicates that the appraisal was based on replacement cost without consideration of the element of depreciation. Plaintiffs argue that straight replacement cost is a permissible standard. We reject this contention. A standard of replacement without depreciation is inconsistent with the intent and the language of the statute which, as noted above, provides for insurance to the extent of the actual cash value of the property at the time of loss but not to exceed the amount it would cost to repair or replace the property with material of like kind and quality. Repair or replacement costs constitutes an upper limit on, not the absolute measure of, the insurer's liability. See *Riegel & Miller, Fire Insurance from Insurance Principles and Practices,* 360 (3d ed. 1947). To equate "actual cash value" with replacement cost alone would render the limiting phrase meaningless. If actual cash value is less than replacement cost in a particular case the former controls.

Rejection of pure replacement cost is further consonant with the legislative provision permitting insurers to provide for extended coverage to include replacement cost under an extended coverage endorsement. *N. J. S. A.* 17:36–5.22

provides that under such an endorsement the insurer may agree "to reimburse and indemnify the insured for the difference between the actual value of the insured property at the time any loss or damage occurs and the amount actually expended to repair, rebuild or replace with new materials of like size, kind and quality * * *." Such an endorsement specifically precludes deduction for depreciation. See *Ruter v. Northwestern Fire and Marine Ins. Co.*, 72 *N. J. Super.* 467, 471–473 (App. Div.), certif. den. 37 *N. J.* 229 (1962). It seems clear that if a specific provision is required to reimburse for pure replacement cost then the basic policy should not be so construed.

Finally, allowing pure replacement cost would violate the principle of indemnity by providing a windfall to the insured:

> To allow the insured to recover the original value of real estate that has depreciated, * * * would be for the insurance company to pay for losses that were not caused by fire. Such prodigality would simply furnish an incentive for the destruction of property, because more could be recovered as insurance than the undamaged property was worth. Even under present conditions it is found that business depressions, which reduce the values of buildings and stocks of goods, are sometimes accompanied by large increases in the fire losses. Such conditions furnish an incentive for a fire.
>
> *Riegel & Miller, supra,* at 358–359.

See Bonbright & Katz, "Valuation of Property to Measure Fire Insurance Losses," 29 *Colum. L. Rev.* 857, 878–879 (1929).

Plaintiffs cite *Farber v. Perkiomen Mutual Ins. Co.*, 370 *Pa.* 480, 88 *A.* 2d 776 (Sup. Ct. 1952), and *Fedas v. Ins. Co. of the State of Pennsylvania,* 300 *Pa.* 555, 151 *A.* 285 (Sup. Ct. 1930), as authority for their position. However, it is not entirely clear that the Pennsylvania cases really so hold. They have been construed not to stand for the proposition that the appraiser may not depreciate a partial loss, but only that "the blanket rate of depreciation taken for purposes of determining actual cash value of the insured

structure may not be applied on a blanket basis to [such] loss." See Cozen, "Measure and Proof of Loss to Buildings and Structures Under Standard Fire Insurance Policies — the Alternatives and Practical Approaches," 12 *Forum* 647, 654 (1977). In any event, to the extent that the policy in *Farber* was to the same effect as our statute in respect of coverage, we disagree with the decision if it meant to hold that the insurer is liable for the replacement cost of a loss without deduction for depreciation.

Plaintiffs' citation of *Wisconsin Screw Co. v. Fireman's Fund Ins. Co.,* 193 *F. Supp.* 96 (E. D. Wis. 1960), is inapposite since the opinion of the Circuit Court on appeal establishes that depreciation was specifically deducted in arriving at the award sustained. 297 *F.* 2d 697, 701 (7 Cir. 1962).

We thus conclude that an appraisal based on replacement cost without consideration of depreciation does not measure "actual cash value" under our statute and is therefore improper.

This appeal constitutes an appropriate vehicle for stating the principles which should guide appraisers in determining "actual cash value." The matter of correct standards has been widely litigated elsewhere.[2] Case law reflects three general categories for measuring "actual cash value": (1) market value, (2) replacement cost less depreciation, and (3) the "broad evidence" rule. See Note, "Valuation and Measure of Recovery Under Fire Insurance Policies," 49 *Colum. L. Rev.* 818, 820–823 (1949) ; Cozen, *op. cit., supra,* 12 *Forum* at 648–658; Hinkle, "The Meaning of 'Actual Cash Value,'" 1967 *Ins. L. J.* 711. See generally Annot. 61 *A. L. R.* 2d 711 (1958).

Market value is generally defined as the price a willing buyer would pay a willing seller, at a fair and *bona*

---

[2] Every state has some statutorily prescribed fire insurance policy. Most states, like New Jersey, follow the New York Standard form. *Riegel & Miller, supra,* at 351–352.

*fide* sale by private contract, neither being under any compulsion. See *Bartindale v. Aetna Ins. Co.,* 7 *N. J. Misc.* 399, 400 (Sup. Ct. 1929). But there is a problem in that a building ordinarily has no recognized market value independent of the parcel of property in entirety, land and building together. See Note, *op. cit., supra,* 49 *Colum. L. Rev.* at 820, where it is observed that the majority of courts have rejected market value as the sole criterion or standard of "actual cash value" although they have allowed the fact-finder to consider it as a factor in computing the actual cash value of a building.[3] It is common practice for a valuation expert to develop a residual market value for a structure by deducting from the market value of the whole parcel the appraised market value of the land. In case of a partial loss, the market value approach looks to determination of the difference between the respective market values of the structure before and after the fire. Note, *op. cit., supra,* 49 *Colum. L. Rev.* at 825–826.

Replacement cost less depreciation has the advantage of relative definiteness. It is also easily ascertained. However, it is inflexible, and this characteristic often results in excessive recovery. Many structures today have a high replacement value because of the inflated cost of building materials even though their true commercial value — represented by rentals, prospective profits, usefulness to the present owner, location and age — is considerably less. *Id.* at 821. See *Harper v. Penn Mut. Fire Ins. Co.,* 199 *F. Supp.* 663, 664–665 (E. D. Va. 1966).

The problem of excessive recovery under the replacement cost less depreciation rule together with the occasional uncertainty of market value prompted development of what is now the most widely accepted rule, generally denominated as the "broad evidence rule." That rule was well explained

---

[3]California follows the market value rule. *Jefferson Insurance Co. of N. Y. v. Superior Court,* 3 *Cal.* 3d 398, 90 *Cal. Rptr.* 608, 475 *P.* 2d 880 (Sup. Ct. 1970), as does Maine. *Forer v. Quincy Mutual Fire Ins. Co.,* 295 *A.* 2d 247 (Maine Sup. Ct. 1972).

by the New York Court of Appeals in *McAnarney v. Newark Fire Insurance Co.,* 247 *N. Y.* 176, 159 *N. E.* 902 (Ct. App. 1928).

In *McAnarney* the insured built a brewery just before Prohibition. The brewery burned down shortly thereafter (arson was not proven). The insured claimed replacement cost minus depreciation, which because of impending Prohibition was more than the building was worth. The insurer was willing to allow market value, which, for the same reason, was probably less than the building would ordinarily have been worth. The Court of Appeals rejected both of these fixed standards of recovery and held that:

> Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. It may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to throw light upon the subject.

159 *N. E.* at 905.

*McAnarney* was intended to assure application of the principle of indemnity (*i.e.,* to make the measure of recovery for fire insurance losses correspond to the actual pecuniary loss sustained by the insured). *Id.* at 904–905. See Bonbright & Katz, *op. cit., supra,* 29 *Colum. L. Rev.* at 899. Under-valuation denies the insured the indemnification due him under the policy. Over-valuation tempts the insured to cause the very loss covered, or at least, to provide inadequate safeguards against the loss. *Id.* at 863.

The commentators generally view the broad evidence rule with approval. See *id.* at 898–899 (a flexible test which can be modified in such a way as to accord more nearly with the principle of indemnity); Cozen, *op. cit., supra,* 12 *Forum* at 657 (sacrificing an easily applied standard for a far more

equitable result). It has been adopted in numerous jurisdictions.[4]

New Jersey courts have applied both the market value test, see *Bartindale v. Aetna Ins. Co., supra* (7 *N. J. Misc.* 399); *Wolf v. Home Ins. Co.,* 100 *N. J. Super.* 27, 45 (Law

---

[4]*E. g., Wisconsin Screw Co. v. Fireman's Fund Ins. Co.,* 297 *F.* 2d 697 (7 Cir. 1962) (assumed that Wisconsin would adopt the broad evidence rule); *First National Ins. Co. v. Norton,* 238 *F.* 2d 949 (10 Cir. 1956) (applying law of Oklahoma); *Thorp v. American Aviation & General Insurance Co.* 212 *F.* 2d 821 (3 Cir. 1954) (affirming conclusion of district judge that New Jersey would apply broad evidence rule); *Group Von Graupen v. Employer's Mutual Fire Ins. Co.,* 259 *F. Supp.* 934 (D. P. R. 1966); *Harper v. Penn Mutual Fire Ins. Co. of West Chester, Pa.,* 199 *F. Supp.* 663 (E. D. Va. 1961); *Nebraska Drillers, Inc. v. Westchester Fire Ins. Co.,* 123 *F. Supp.* 678 (D. Colo. 1954); *Castoldi v. Hartford County Mutual Fire Ins. Co.,* 21 *Conn. Sup.* 265, 154 *A.* 2d 247 (Super. Ct. 1959) (court notes all three rules, applied broad evidence rule although variation may be required in particular circumstances); *New York Cent. Mut. Fire Ins. Co. v. Diaks,* 69 *So.* 2d 786 (Fla. Sup. Ct. 1954); *Britven v. Accidental Ins. Co.,* 234 *Iowa* 682, 13 *N. W.* 2d 791 (Sup. Ct. 1944); *American States Ins. Co. v. Mo-Lew, Inc.,* 427 *S. W.* 2d 236 (Ky. Ct. App. 1968); *Mercer v. St. Paul Fire & Marine Insurance Co.,* 318 *So.* 2d 111 (La. App. 1975); *Schreiber v. Pacific Coast Fire Ins. Co.,* 195 *Md.* 639, 75 *A.* 2d 108 (Ct. App. 1950) (appraisal based on replacement depreciation was valid so long as all relevant evidence was considered); *Agoos Leather Companies v. American & Foreign Ins. Co.,* 342 *Mass.* 603, 174 *N. E.* 2d 652 (Sup. Ct. 1961); *Brooks Realty, Inc. v. Aetna Ins. Co.,* 276 *Minn.* 245, 149 *N. W.* 2d 494 (Sup. Ct. 1967); *Pinet v. New Hampshire Fire Ins. Co.,* 100 *N. H.* 346, 126 *A.* 2d 262 (Sup. Ct. 1956); *Rochester American Ins. Co. v. Short,* 207 *Okl.* 669, 252 *P.* 2d 490 (Sup. Ct. 1953); *National-Ben Franklin Fire Ins. Co. v. Short,* 207 *Okl.* 673, 252 *P.* 2d 495 (Sup. Ct. 1953); *Lampe Market Co. v. Alliance Ins. Co.,* 71 *S. D.* 120, 22 *N. W.* 2d 427 (Sup. Ct. 1946); *Braddock v. Memphis Fire Ins. Corp.,* 493 *S. W.* 2d 453 (Tenn. Sup. Ct. 1973); *Crisp v. Security National Ins. Co.,* 369 *S. W.* 2d 326 (Tex. Sup. Ct. 1963); *Eagle Square Mfg. Co. v. Vermont Mutual Fire Ins. Co.,* 125 *Vt.* 221, 212 *A.* 2d 636 (Sup. Ct. 1965), reh. den. 213 *A.* 2d 201 (1965); *Doegler & Kirsten, Inc. v. National Union Fire Ins. Co.,* 42 *Wis.* 2d 518, 167 *N. W.* 2d 198 (Sup. Ct. 1969) (broad evidence rule applies; award based on replacement cost minus depreciation and obsolescence proper).

Div.) aff'd 103 *N. J. Super.* 357 (App. Div. 1968) (issue, the time for evaluating loss; court not presented with the choice of a standard, merely assuming fair market value was appropriate), and the "broad evidence rule," see *Messing v. Reliance Ins. Co., 77 N. J. Super.* 531, 533–535 (Law Div. 1962). The court in *Messing* reviewed the various standards and concluded that the broad evidence rule was most consistent with the principle of indemnity. *Id.* at 534.

We find the rationale of the broad evidence rule to be compelling. It requires the fact-finder to consider all evidence an expert would consider relevant to an evaluation, and particularly both fair market value and replacement cost less depreciation. If the appraiser finds it appropriate under the particular circumstances he may, after weighing both factors, settle on either alone. See *Doelger & Kirsten, Inc. v. National Union Fire Ins. Co., supra,* 167 *N. W.* 2d at 200; *Schreiber v. Pacific Coast Fire Ins. Co., supra,* 75 *A.* 2d at 111. Normally, replacement cost minus depreciation can be significant evidence of value but it is not necessarily conclusive. See *id.;* Bonbright & Katz, *op cit., supra,* 29 *Colum. L. Rev.* at 896. Thus under the broad evidence rule the two stated criteria do not bind the fact-finder but instead become guidelines, along with other relevant evidence. No evidence is *per se* exclusive of other evidence; any evidence may be used jointly or alternatively according to the circumstances and the property to be evaluated. See *Pinet v. New Hampshire Fire Ins. Co., supra,* 126 *A.* 2d at 265. *Cf. New Brunswick v. State of N. J. Div. of Tax Appeals,* 39 *N. J.* 537, 542–551 (1963) (Weintraub, C. J.) (while capitalization of income is an acceptable approach to tax assessment valuation it should not lightly be accepted as the single guide to such; there can be no rigid rule; generally it is well to measure its results against other known data).

The broad evidence rule is consistent with the narrow standard of judicial review generally accorded to appraisal awards. See *Igoe Bros., Inc. v. National Ben Franklin Fire*

*Ins. Co.,* 110 *N. J. Eq.* 373 (E. & A. 1932). The wider the range of evidence considered by the fact-finder, the more reasonable it is for a court to accept his conclusions. A result reached under the broad evidence rule is more likely to be reliable than one based on either of the other standards alone. See pp. 11–12, *supra.* If the appraiser gives reasonable consideration to all relevant evidence, his award should ordinarily stand.

We thus hold that the proper standard for evaluating "actual cash value" under the New Jersey Standard Form Policy is the broad evidence rule.[5]

## II

We turn to the question whether the failure of the appraisers to deduct depreciation from replacement cost constitutes sufficient cause to set aside the award.

Initially, the trial judge and Appellate Division were correct in approaching the matter of review of the appraisal award from a narrow perspective. It is not in the public interest to encourage litigation over procedures which were designed to resolve disputes without litigation. See *Collingswood Hosiery Mills, Inc. v. American Fed'n of Hosiery Workers,* 31 *N. J. Super.* 466, 473 (App. Div. 1954) (arbitration). Thus every reasonable intendment and presumption comes to the support of such awards. *Melton Bros. v. Phila. Fire Ins. Co.,* 104 *N. J. Eq.* 153, 158 (E. & A. 1929)

---

[5]We perceive no reason for distinguishing between the standard of evaluation for a total loss and that for a partial loss. *N. J. S. A.* 17: 36–5.19 makes no such distinction; it specifies but one measure of recovery, "actual cash value." Any such distinction may lead to anomalous results. See Note, *supra,* 49 *Colum. L. Rev.* at 826, n. 6 (insured might recover more for a partial loss than a total loss). It is realized however, that where an appraisal is made after a partial loss there may be difficult proof problems ·in arriving at the putative market value of the portion of the structure destroyed as distinguished from the entirety.

(appraisal); *Held v. Comfort Bus Lines, Inc.,* 136 *N. J. L.* 640, 642 (Sup. Ct. 1948) (arbitration).

An appraiser, however, can make no legal determinations. See *Feinbloom v. Camden Fire Ins. Co.,* 54 *N. J. Super.* 541, 547 (App. Div. 1959), certif. den. 30 *N. J.* 154 (1959). The instant appraisers awarded pure replacement cost under a contract and statute which allowed for recovery only to the extent of the "actual cash value." As indicated in Point I above, to the extent that replacement cost is or may be a proper criterion of actual cash value, there must normally be a deduction for depreciation lest the insured receive more than indemnity for his loss. In failing to make such a deduction, the appraisers violated the terms of the policy and committed a mistake of law. *Cf. In Re Arbitration Between Mary & William Harris,* 140 *N. J. Super.* 10, 15 (App. Div. 1976) (arbitrator is limited to the policy terms and an award in excess of policy limits is a mistake of law).

The Appellate Division's reliance on *Igoe Bros., Inc. v. Nat. Ben Franklin Fire Ins. Co., supra,* 110 *N. J. Eq.* 373, is unfounded. The court there held that an award would not be set aside merely because of an erroneous conclusion of fact. *Id.* at 377. The case did not concern legal error as here.

There is an alternative justification for setting aside the award. During discussions among the appraisers as to the amount of loss, Thomas, defendant's appraiser, attempted to ascertain such factors as the actual cost to Elberon of effecting the repairs, the actual extent of repairs made, the age of the building, depreciation, the use to which the building had been put and the condition of the building prior to the fire. However, the umpire and the other appraiser refused to attempt to elicit or consider such information.

We have held above that "actual cash value" is to be ascertained by consideration of all relevant evidence. The courts of California and New York have vacated appraisals

where the appraisers failed to comply with the applicable standard for ascertaining loss. In *Jefferson Insurance Co. of N. Y. v. Superior Court, supra,* 90 *Cal. Rptr.* at 611, 475 *P.* 2d at 883, the California Supreme Court vacated an appraisal where the appraisers had considered only replacement cost minus depreciation whereas the California standard was market value. In *Gervant v. New England Fire Ins. Co.,* 306 *N. Y.* 393, 118 *N. E.* 2d 574 (Ct. App. 1954), it was legal misconduct for an appraiser to consider only evidence as to replacement cost minus depreciation because New York follows the broad evidence rule. *Id.* at 577.

We consequently conclude that the refusal of these appraisers even to consider such factors as those listed above constituted legal misconduct and of itself justifies vacation of the award.[6] Compare *N. J. S. A.* 2A:24–8(c), which provides that where arbitrators refuse to hear evidence pertinent and material to the controversy, the court shall vacate the award.

## III

■ Defendant raises the question whether the trial court was required to proceed in this matter under and pursuant to the Arbitration Act, *N. J. S. A.* 2A:24–1 *et seq.* It asserts that if the act was applicable, the award should be vacated because the procedures followed by the appraisers did not conform thereto. We have concluded that the Arbitration Act is not applicable.

■ A comparison of appraisal and arbitration will be helpful. The purposes of both are the same: to submit disputes to third parties and effect their speedy and efficient

---

[6] In some cases a refusal to consider relevant evidence, while improper, might not in itself be cause to set aside an award if the result reached appeared reasonable. Here, however, exclusion of depreciation while applying replacement cost new prevents the result from being reasonable.

resolution without recourse to the courts. To assure minimum judicial intervention, the scope of judicial review of both types of recourse is narrow. See *Melton Bros. v. Phila. Fire & Marine Ins. Co., supra,* 104 *N. J. Eq.* at 158 (appraisal) ; *Collingswood Hosiery Mills, Inc. v. American Fed'n of Hosiery Workers, supra,* 31 *N. J. Super.* at 471–473 (arbitration).

The distinctions are significant. An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, and judgment may be entered upon the award, whereas an appraisal establishes only the amount of loss and not liability. *Lakewood Tp. Mun. Util. v. S. Lakewood Water Co.,* 129 *N. J. Super.* 462, 471 (App. Div. 1974) (citing 5 *Am. Jur., Arbitration and Award,* § 3 at 520, 521). Arbitration is conducted as a quasi-judicial proceeding, with hearings, notice of hearings, oaths of arbitrators and oaths of witnesses. Appraisers act on their own skill and knowledge, need not be sworn and need hold no formal hearings so long as both sides are given an opportunity to state their positions. Note, "Arbitration or Appraisement?," 8 *Syracuse L. Rev.* 205, 206 (1957).

The instant policy provision clearly called for an appraisal. That the procedures mandated by the Arbitration Act, see, *e.g., N. J. S. A.* 2A:24–6, were not followed and that there was no finding with respect to liability tends to indicate that the fact-finders purported to conduct an appraisal. This was entirely proper.

 Nothing in the Arbitration Act requires that fire insurance appraisals comply with that statute. Indeed, the word "appraisal" is not found in the act. See *In re Delmar Box Co.,* 309 *N. Y.* 60, 127 *N. E.* 2d 808, 810–811 (Ct. App. 1955), where the New York court noted the long-prevailing distinctions between appraisals and arbitration, and concluded that any determination that the formal requirements under the arbitration act should apply to fire loss appraisals should come from the Legislature. *Id.* at 813. Compare *Jefferson Insurance Company of N. Y. v.*

*Superior Court, supra,* 90 *Cal. Rptr.* at 610, n. 41, 475 *P. 2d* at 882, n. 41 (under the California Code of Civil Procedure, enforcement procedures respecting arbitration have been made applicable to appraisals). The intention to change a long-established rule or principle is not to be imputed to the Legislature in the absence of a clear manifestation thereof. *State v. Western Union Tel. Co.,* 12 *N. J.* 468, 486 (1953).

Furthermore, since application of the broad evidence rule to appraisals will promote the interchange of information between the appraisers and the parties, one may expect enhancement of the fairness of the procedure without burdening the appraisal with the formalities of arbitration (*e.g.,* oaths, notice of hearings, etc.).

Finally, since arbitrators are entrusted with the broader obligation to determine liability as well as the amount of the award, it is reasonable to require broader procedural safeguards in arbitration. The subject-matter responsibility of appraisers being less, the procedural safeguards attending an appraisal may be lower. However, the Court must correct any erroneous exercise of jurisdiction by an appraiser.

## IV

Pursuant to *N. J. S. A.* 17:36–5.20, the policy provided that in the event of fraud, willful concealment or misrepresentation, before or after the loss, of any material fact or circumstance concerning the insurance, the policy would become void. Defendant raised before the trial judge the defense of fraud based on an excessive claim and requested discovery relating to this defense. The judge denied discovery and assuming the procedure to have been an arbitration, made no independent judicial finding as to liability and entered judgment for plaintiffs.

As noted above, under a fire appraisal the question of liability is reserved for the reviewing court. At no point did defendant admit liability; rather, it pleaded a defense.

Thus it was the obligation of the trial judge to determine the question of liability, and his failure to do so constituted error. On remand the judge must conduct a plenary trial as to the defense asserted by defendant.

 As for discovery, plaintiffs argue that the claim of fraud did not arise until after the award and that the defendant could have examined plaintiffs pursuant to the policy at an earlier time. In effect, plaintiffs contend that defendant waived any right to discovery. We find no merit in this position. The question of fraud did not arise until the amount of the award had been determined. Thus defendant had no reason to contest liability on grounds of fraud at an earlier stage. Pretrial discovery on this issue should be permitted.

## V

If the judge on the remand finds liability on the part of defendant, he shall direct the appraisal procedure to be instituted anew with instructions that the new appraisers make their evaluation of loss based on consideration of all relevant evidence, pursuant to the principles outlined above. If the judge sustains the defense of fraud, willful misrepresentation or concealment, he shall enter judgment for defendant.

The judgment is reversed and the cause is remanded to the Law Division for further proceedings conforming to this opinion.

*For reversal and remandment*—Chief Justice HUGHES, Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD—7.

*For affirmance*—None.