260 N.J. Super. 579 (1992)
617 A.2d 296
JAMES LANCELLOTTI AND CARL LANCELLOTTI, PLAINTIFFS-APPELLANTS,
v.
MARYLAND CASUALTY CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 1992.
Decided December 11, 1992.
*581 Before Judges ANTELL, DREIER and SKILLMAN.
Benjamin P. De Sena, attorney for appellants.
Gennet, Kallmann, Antin & Robinson, attorneys for respondent (Stanley W. Kallmann, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
*582 Plaintiffs appeal from a judgment dismissing their complaint on a fire insurance policy following a colloquy between court and counsel after a jury had been empaneled. Plaintiffs, Carl and James Lancellotti, operated a truck repair business at 57-61 Mallory Avenue in Jersey City through a corporation known as J & L Diesel Repair, Inc. (hereinafter "J & L"). The corporation's charter was revoked by the New Jersey Secretary of State in 1983 for non-payment of franchise taxes, and on March 7, 1984, the insurance policy that is the subject of this suit was amended to change the name of the insured from the corporation to the name of plaintiff Carl Lancellotti, the owner of the building in which the business was conducted. At the same time, the policy limits were increased to $220,000 for the building, $160,000 for contents and $120,000 for loss of earnings.
On April 17, 1984, the building and its contents were largely destroyed by fire. Defendant insurer declined payment, asserting the defense of arson. Defendant also argued that plaintiffs lacked standing because they had no insurable interest in the contents and earnings of the business.
The record herein consists of extensive discussions about plaintiffs' anticipated proofs among and between court and counsel. The court reminded plaintiffs of two orders, dated June 9, 1989, and January 22, 1990, calling for production of all expert reports and barring any expert testimony if the reports were not presented. Plaintiffs' attorney stated that Carl Lancellotti had submitted to defendant a list of the contents and their valuations shortly after the fire, and that his testimony would address that information.
After the jury was sworn, defense counsel moved to limit proofs in order to restrict plaintiffs' opening statement. Although the transcript is not altogether clear, it appears that the court dismissed the complaint for the following reasons: (1) the plaintiffs lacked standing because the corporation, not the *583 individual plaintiffs, owned the business carried on within the building, including its contents and earnings, at the time of the loss, (2) because plaintiffs had not furnished their experts' reports they would be unable to prove the cost of damage to the building or its contents, and (3) because they had no expert witness to testify as to the length of time reasonably necessary to rebuild, repair or replace the building they could not prove their loss of business earnings.

STANDING
The Secretary of State revoked the corporate charter of J & L sometime in 1983, and the insurance policy was amended March 7, 1984. Both these events took place prior to the fire. The effect of the revocation was to dissolve the corporation. N.J.S.A. 14A:12-8(b). A dissolution prohibits the corporation from carrying on its business except for the purpose of winding up its affairs by (a) collecting its assets; (b) conveying for cash such of its assets as are not to be distributed in kind to its shareholders; (c) paying, satisfying and discharging its debts and other liabilities; and (d) doing all other acts required to liquidate its business and affairs. N.J.S.A. 14A:12-9(1).
A dissolved corporation exists solely to prosecute and defend suits, and not for the purpose of continuing the business for which it was established. Leventhal v. Atlantic Rainbow Painting Co., Ltd., 68 N.J. Super. 406, 412, 172 A.2d 710 (App.Div. 1961). See also Landa v. Adams, 162 N.J. Super. 318, 321, 392 A.2d 1215 (App.Div. 1978). Furthermore, "persons who carry on the business of a corporation ... after the charter has expired, or after dissolution, become personally liable as general partners." Leventhal, supra, 68 N.J. Super. at 413, 172 A.2d 710. See generally, Thomas G. Fischer, Annotation, Liability of Shareholders, Directors, and Officers Where Corporate Business is Continued After its Dissolution, 72 A.L.R.4th 419 (1989). The corollary of that proposition, in our view, is that *584 such persons are also entitled to claim the earnings and assets of that business.
At the time of the loss, the business earnings and the contents of the building formed part of the enterprise that was taken over and conducted by plaintiffs in their individual capacities. Plaintiffs were entitled to insure the earnings and contents as individuals since, clearly, they had an insurable interest in their own business. It is sufficient for an insurable interest
"... if the insured holds such a relation to the property that its destruction by fire would result in pecuniary loss to him. The test of insurable interest in property is whether the insured has such a right, title or interest therein, or relation thereto, that he will be benefitted by its preservation and continued existence or suffer a direct pecuniary loss from its destruction or injury by the peril insured against." [Emphasis supplied]
Hyman v. Sun Ins. Co., 70 N.J. Super. 96, 100, 175 A.2d 247 (App.Div. 1961) (quoting Farmers Mut. Fire Ins. Co. v. Pollock, 52 Ga. App. 603, 184 S.E. 383, 386 (1936)).

PROOF OF DAMAGES

A. The Building

The insurance policy provides that the loss valuation is the actual cash value of the property. Plaintiffs' proof of actual cash value consisted of an appraisal of value before the fire and the sales price of the building eight months after the fire, the difference between the two figures being the amount of the loss. In so doing, plaintiffs relied upon the concept of fair market value to prove their loss. The leading case on the meaning of actual cash value is Elberon Bathing Co. v. Ambassador Ins. Co. Inc., 77 N.J. 1, 389 A.2d 439 (1978). In Elberon, the Supreme Court adopted the "broad evidence rule" for determining actual cash value. Id. at 14, 389 A.2d 439. Writing for the Court, Judge Conford explained as follows:
We find the rationale of the broad evidence rule to be compelling. It requires the fact-finder to consider all evidence an expert would consider relevant to an evaluation, and particularly both fair market value and replacement cost less depreciation. If the appraiser finds it appropriate under the particular circumstances he may, after weighing both factors, settle on either alone.

*585 [Id. at 13, 389 A.2d 439; emphasis ours.]
Thus, plaintiffs' intention to prove actual cash value by reliance upon fair market value alone would not have been successful. As Elberon states, although the fact finder may ultimately decide actual cash value by relying on fair market value alone, it may do so only after weighing both, fair market value and replacement cost.
Notwithstanding this deficiency in plaintiffs' proposed proofs, the complaint should not have been dismissed. We gather from the transcript that during discovery defendant had provided plaintiff with its own estimate of the amount of loss. Plaintiffs stated that they would be willing to rely for their proof of damages on the estimate that defendant had furnished them. The court should have permitted plaintiffs to proceed in reliance on defendant's estimate. Defendant had undertaken to indemnify plaintiffs against loss by fire. A loss occurred which was facially covered by defendant's policy, and defendant advances no reason why plaintiffs should not have been permitted to prove their claim based upon what defendant concedes to be the amount of the loss.

B. Contents

Plaintiffs proposed to prove the value of destroyed or damaged contents through the testimony of Carl Lancellotti. They told the court that Mr. Lancellotti would testify in accordance with a list of the contents and valuations he had submitted to defendant shortly after the fire. Therefore, his testimony would not have come as a surprise to defendant. That offer of proof was rejected by the court because Mr. Lancellotti is not a qualified expert and because of the previous orders requiring production of experts' reports. However, an insured owner of damaged or destroyed property may, without being qualified as an expert, testify to his own estimate of value. In Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420, 524 A.2d 405 (App.Div. 1987), we wrote the following:

*586 Proof of damages need not be done with exactitude, particularly when dealing with household furnishings and wearing apparel. It is therefore sufficient that the plaintiff prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate. Holmes v. Freeman, [23 Conn. Supp. 504] 185 A.2d [88] at 91 [(Conn.Cir.A.D. 1962)].
In providing such evidence, the plaintiff, as owner may give an opinion of worth although he or she is without expert knowledge. [citations omitted] The basis for arriving at the opinion must, however, not be a matter of speculation and the witness must be required to establish the grounds for any opinion given. It is for the jury, with appropriate instructions from the court, to ascertain the probative value of the opinion. We do not find Evid.R. 19 to be to the contrary.
See also Nixon v. Lawhon, 32 N.J. Super. 351, 356, 108 A.2d 480 (App.Div. 1954).
Regrettably, the record does not enlighten us as to the exact nature of the destroyed contents and we recognize the possibility that they may include articles whose value lies beyond plaintiffs' competence to establish by their own testimony. However, we conclude that Carl Lancellotti should at least have been permitted to present his qualifications as a witness and, absent demonstrated reasons to the contrary, testify to the cost of damage to contents.

C. Earnings

The policy also afforded coverage against lost earnings caused by the interruption of business
for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described that has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration on this policy.
Plaintiffs acknowledge that they had no expert testimony with respect to the time it would take under the foregoing provision to rebuild, repair or replace the damaged building. However, they assert that the foregoing policy provision is inapplicable because of defendant's failure to pay the claim for building loss in timely fashion, thus withholding from plaintiffs the resources necessary to reconstruct the building and resume the business.
*587 The postulate of plaintiffs' argument is that the policy "requires that the insurance company pay all claims within 30 days after they are presented." What the policy actually states is that the loss shall be payable thirty days after proof of loss is received by the company "and ascertainment of the loss is made either by agreement between the insured and this company expressed in writing or by the filing with this Company of an award as herein provided." The "award" mentioned refers to a provision elsewhere in the policy that in the event of disagreement between the insured and the insurer the dispute must be resolved by the filing of an award by two appraisers, one selected by the insured and the other by the insurer or, in the event of disagreement between the appraisers, by an independent umpire. It does not appear to us that any of these contingencies have occurred and defendant's obligation to pay a loss has not been triggered.
Since the premise of plaintiffs' argument is not borne out by the language of the policy, it follows that their attempt to impute the lost earnings to defendant's failure to pay the building loss claim must fail. In view of the fact that this matter must be remanded for reasons previously stated, plaintiffs will have the opportunity to prepare themselves with evidence necessary to prove their lost earnings under the policy. We leave it to the trial court to decide the nature and extent of the expertise, if any, required to support the testimonial opinions as to the length of time needed to rebuild, repair or replace the damaged or destroyed property. However, plaintiffs should be accorded an opportunity to qualify themselves to furnish those requisite opinions.
Reversed and remanded for further proceedings consistent with this opinion.