261 N.J. Super. 428 (1993)
619 A.2d 241
THE CHASE MANHATTAN BANK, A NATIONAL ASSOCIATION, PLAINTIFF-RESPONDENT,
v.
MR. AND MRS. SEYMOUR JOSEPHSON, SHERRI BAGNELL AND ROBERT HANSELMAN, DEFENDANTS-APPELLANTS, AND SAUL WERNER AND GRACE WERNER, MATTHEW STEINFELD, KIM CAGLIARI, CORRINE MCLAUGHLIN, AND ALEX CAPRIO, DEFENDANTS. MARYLAND NATIONAL MORTGAGE CORPORATION, PLAINTIFF-RESPONDENT,
v.
REBECCA LITTLEJOHN, DEFENDANT-APPELLANT, AND GEORGE CLAPPS, GWENDOLYN, CLAPPS, STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1992.
Decided January 6, 1993.
*429 Before J.H. COLEMAN, SHEBELL and CONLEY, JJ.
*430 Susan R. Oxford, Assistant Deputy Public Defender, argued the cause for appellants (Zulima V. Farber, Public Advocate, attorney; Ms. Oxford of counsel and on the brief).
Robert J. Donaher argued the cause for respondent (Waters, McPherson, McNeill, attorneys; Gregory J. Castano and Kenneth D. McPherson, Jr., of counsel; Mr. Donaher on the brief).
Gregory G. Diebold, attorney for amicus curiae Hudson County Legal Services Corporation appeared but did not argue (Mr. Diebold of counsel and on the brief).
Jamieson, Moore, Peskin & Spicer, attorneys for amicus curiae New Jersey Bankers Association (Dennis R. Casale of counsel and on the brief).
Maura A. Sanders argued the cause for appellant Rebecca LittleJohn (Essex-Newark Legal Services, attorney; Ms. Sanders of counsel and on the brief).
Harold N. Kaplan argued the cause for respondent Maryland National Mortgage Corporation (Federman and Phelan, attorneys; Mr. Kaplan on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
These consolidated cases raise the identical issue of whether the L. 1986, c. 138, effective October 29, 1986, amending the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 et seq., overturned Guttenberg Sav. and Loan Ass'n v. Rivera, 85 N.J. 617, 428 A.2d 1289 (1981), which held that a foreclosing mortgagee's right to possession is superior to that of a subsequent lessee. The trial judge in each of the two foreclosure proceedings involved in this appeal held that the 1986 amendments did not overturn Guttenberg. We agree and affirm.

I
The facts in the Maryland National Mortgage Corporation (Maryland National) case are simple. On January 28, 1988, *431 George Clapps and his wife Gwendolyn Clapps purchased 66 Oak Avenue, Irvington, N.J. On the same day they executed a purchase money mortgage to E.B. Mortgage Corporation for $58,200. The mortgage was recorded February 5, 1988. The bond and mortgage gave the mortgagee the right to possession upon default. The Clapps defaulted on the mortgage on February 1, 1991, and foreclosure proceedings were instituted on November 12, 1991, followed by the filing of a lis pendens on December 9, 1991. After the complaint was filed, defendant-appellant Rebecca LittleJohn entered into possession under a lease on the property with the Clapps dated January 3, 1992. The complaint was amended to name her as a defendant for the purpose of seeking possession. LittleJohn filed an answer which was eventually stricken, and the matter was ordered to proceed as an uncontested foreclosure action. We granted LittleJohn leave to appeal.

II
The facts in the Chase Manhattan Bank (Chase) case are a bit more complex. Seymour Josephson and his wife Marianne Josephson took possession of a single family home located at 650 Prospect Avenue, West Orange, N.J. in 1973 under a one year lease. The Carteret School for Boys owned the house as part of a much larger estate. The lease was renewed annually until 1978 when they became, they assert, month-to-month oral lessees.
In September 1987 Robert Hanselman became a tenant in another single family home, located at 646 Prospect Avenue, West Orange, N.J., also owned by the Carteret School for Boys. Both 646 and 650 Prospect Avenue along with other property were sold by the Carteret School for Boys in November 1987 to Saul Werner and Grace Werner, his wife. The purchase was financed largely through funds obtained from Chase on November 23, 1987 when the Werners executed a "Mortgage, Assignment of Leases and Rents and Security Agreement" dated *432 November 23, 1987. The deed and mortgage were recorded on December 11, 1987. The bond and mortgage gave the mortgagee the right to possession upon default.
Robert Hanselman vacated 646 Prospect Avenue in 1989. However, in June of 1990, he moved back into the house along with Sherri Bagnell. On July 9, 1989, the Werners were deemed in default, and a complaint in foreclosure was filed on October 20, 1989. The Werners filed an answer and counterclaim which were stricken on June 15, 1990. Three days later the Werners filed a petition for voluntary bankruptcy under the United States Bankruptcy Code on June 18, 1990. On March 19, 1991, Chase accepted a deed from the Werners in lieu of finalizing the foreclosure action and then obtaining a sheriff's deed. After the deed was recorded, discovery provided by the Werners in the bankruptcy proceeding revealed there were tenants occupying the single family homes. Therefore orders were entered on April 19, 1991 and thereafter allowing Chase to amend the complaint in foreclosure to name the tenants, the Josephsons, Hanselman and Bagnell, as defendants in order to obtain a judgment for possession against them.
On December 17, 1991, Chase filed a motion for summary judgment seeking to eject all the tenants from the respective properties. The attorney representing the tenants on the return date of the motion did not oppose the application. The requested ejectments were granted on January 24, 1992. A few days later, however, the Public Advocate filed a motion for reconsideration on behalf of the tenants on February 3, 1992. The Public Advocate argued that the 1986 amendments to the Anti-Eviction Act required Chase to show good cause for removal pursuant to N.J.S.A. 2A:18-61.1. On March 13, 1992, the judge concluded that the 1986 amendments were not intended to overturn Guttenberg and that the Josephsons were month-to-month tenants thereby precluding any relief under Guttenberg or the 1986 amendments.
*433 The Josephsons, Hanselman and Bagnell have appealed. In the brief filed on behalf of these appellants, we have been advised that "Robert Hanselmann and Sherri Bagnell have also elected to vacate their premises pursuant to the lower court's January 24, 1992, order rather than pay back rent." Since the right to continued possession is the only issue raised on appeal, and Hanselman and Bagnell have surrendered possession voluntarily, the appeal is dismissed as to them.

III
The Josephsons contend that because they were tenants in possession under a month-to-month lease before the Chase mortgage was recorded, they are protected from eviction except for removal for cause as provided under N.J.S.A. 2A:18-61.1. They argue that "where the tenancy predates the mortgage, whether based on a written lease or an oral month-to-month lease, a foreclosing mortgagee acquires the property subject to the lease."
We begin our analysis with a determination of whether the Josephsons were month-to-month tenants, as found by the trial judge, or month-to-month lessees as contended by the Josephsons. Seymour Josephson states in his affidavit that he and his wife moved into the single family house located at 650 Prospect Avenue in West Orange, N.J., in 1973 when the Carteret School for Boys owned the property. They took possession of the house under a one year lease which was renewed annually until 1978. When the last annual lease expired in 1978, they continued in possession of the house under the same conditions on a month-to-month basis. In 1987, they began paying the rent monthly to Saul Werner and continued until June 1991 when they were informed the property had been transferred to Chase as a result of a foreclosure action.
In Steffens v. Earl, 40 N.J.L. 128, 137-138 (Sup.Ct. 1878), it was observed that where "there is no evidence but the mere fact a payment [of rent] at intervals of a week or a *434 month, the implication is that the renting is a monthly or weekly one, just as the payment is monthly or weekly." Since the Josephsons do not assert that there was any express reservation of the annual rental at the end of the last one year lease in 1978, upon expiration of the last written lease in 1978, they became month-to-month tenants. Maier v. Champion, 97 N.J.L. 493, 494-496, 117 A. 603 (E. & A. 1922). See also Shield v. Welch, 4 N.J. 563, 568-569, 73 A.2d 536 (1950); N.J.S.A. 46:8-10; 22 New Jersey Practice, Landlord and Tenant Law § 53, at 59-60 (Lewine) (rev. 3d ed. 1962). Absent a lease which fixes the term of the letting, the interval of payment determines the time of the tenure. Albey v. Weingart, 71 N.J.L. 92, 93-94, 58 A. 87 (Sup.Ct. 1904). More recently, our Supreme Court observed that a tenant in possession of realty without an executory lease is a month-to-month tenant. Harry's Village, Inc. v. Egg Harbor Tp., 89 N.J. 576, 583, 446 A.2d 862 (1982). Thus when Chase recorded its mortgage while the Josephsons were in possession, any inquiry of them would have revealed they were month-to-month tenants. See Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 128, 228 A.2d 674 (1967).
Contrary to the Josephsons' assertion, Guttenberg does not accord a preference to a month-to-month tenant in possession prior to recording the mortgage. Although Guttenberg does use the words "tenant" and "tenancy," those words are always used in reference to a tenant or a tenancy under an executory lease at the time the mortgage was recorded. This is clear from the Supreme Court's statement of the issue presented as one dealing with "tenants under leases subordinate to the mortgage." Guttenberg, supra, 85 N.J. at 623, 428 A.2d 1289. The Court held that the Anti-Eviction "Act applies only to the traditional landlord-tenant relationship and not to that of a mortgagee holding a lien prior to the leasehold of a tenant in possession." Ibid. (emphasis supplied). Also, Guttenberg refers to American-Italian B. & L. Ass'n v. Liotta, 117 N.J.L. 467, 472-473, 189 A. 118 (E. & A. 1937), which emphasizes that only a tenant in possession under an executory lease prior to a *435 recorded mortgage is not affected by foreclosure of the mortgage. Guttenberg, supra, 85 N.J. at 626, n. 3, 428 A.2d 1289. Accordingly, since the Josephson's tenancy was not under an executory lease when the Chase mortgage was recorded, they are merely month-to-month tenants, rather than month-to-month lessees. See N.J.S.A. 46:8-10. Guttenberg does not accord a preference to month-to-month tenants in possession, even where the tenancy predated the mortgage. That distinction notwithstanding, if the 1986 amendments overturned Guttenberg, it would not matter whether the Josephsons were month-to-month tenants or lessees, both would be protected by the Anti-Eviction Act.

IV
The appellants in both cases contend that the 1986 amendments to the Anti-Eviction Act overturned Guttenberg and require foreclosing mortgagees to comply with the removal for cause provision in the Anti-Eviction Act, N.J.S.A. 2A:18.-61.1. They argue N.J.S.A. 2A:18-61.3b added in 1986 precluded the judgments for possession. We also reject this contention.
Prior to the 1986 amendments, N.J.S.A. 2A:18-61.3 read:
No landlord may evict or fail to renew any lease of any premises covered by section 2 of this act (N.J.S.A. 2A:18-61.1) except for good cause as defined in section 2. [See Guttenberg, 85 N.J. at 624, 428 A.2d 1289.]
The 1986 amendments changed N.J.S.A. 2A:18-61.3 to read as follows:
a. No landlord may evict or fail to renew any lease of any premises covered by section 2 of this act except for good cause as defined in section 2.
b. A person who was a tenant of a landlord in premises covered by section 2 of P.L. 1974, c. 49 (C. 2A:18-61.1) may not be removed by an order or judgment for possession from the premises by the owner's or landlord's successor in ownership or possession except:

(1) For good cause in accordance with the requirements which apply to premises covered pursuant to P.L. 1974, c. 49 (C. 2A:18-61.1 et seq.; or
(2) For proceedings in premises where federal law supersedes applicable State law governing removal of occupants; or

*436 (3) For proceedings where removal of occupants is sought by an authorized State or local agency pursuant to eminent domain or code enforcement laws and which comply with applicable relocation laws pursuant to the "Relocation Assistance Law of 1967," P.L. 1967, c. 79 (C. 52:31B-1 et seq.) and the "Relocation Assistance Act," P.L. 1971, c. 362 (C. 20:4-1 et seq.).
Where the owner's or landlord's successor in ownership or possession is not bound by the lease entered into with the former tenant and may offer a different lease to the former tenant, nothing in this 1986 amendatory and supplementary act shall limit that right. (Emphasis added).
The 1986 amendments were based on Senate Bill S-1912, introduced March 3, 1986 by Senator Jackman and Assembly Bill A-1840, introduced February 3, 1986 by eleven Assembly members. The identical statements which accompanied both bills provided that this "bill would prevent landlords from using certain legal pretexts to eject tenants in order to make the building available for conversion to condominiums or cooperatives, or for subsequent rental at more lucrative rents." Both bills were amended and enacted as the "Senate Committee" substitute for Senate No. 1912 and Assembly No. 1840, hereafter referred to as the combined bills.
The Senate Labor, Industry and Professions Committee Statement, which accompanied the combined Senate and Assembly bills dated June 9, 1986, states: "This bill addresses abuses that tenants suffer when a landlord evicts them because he seeks to permanently board up or demolish his building or seeks to retire permanently the building from residential use and then subsequently allows residential occupancy of the building."
Senator Lesniak proposed some minor changes to the official reprint of the combined bills which the Senate adopted on June 23, 1986. The Senate adopted the combined bills, as amended by the Lesniak proposals, on June 30, 1986, and the same were passed in the Assembly on September 15, 1986. A comparison of the language in the combined bills both before and after the Lesniak changes, convinces us that the Lesniak changes were merely technical and that nothing in those amendments affected the rights of foreclosing mortgagees to possession.
*437 Beyond that, when the Governor signed the combined bills on October 29, 1986, a news release from the Governor's office stated that the Governor "signed into law sweeping protection for New Jersey tenants from the threat of eviction in real estate conversion projects ... by providing more protection for tenants against inequitable displacement by landlords." The release stated further that "current law allows a landlord to evict tenants if he [landlord] can claim to be taking a building off the residential market in six months. The new law allows for an 18 month prior notice and the landlord must tell the State how the building will be used." This news release is consistent with the legislative findings and statement contained in N.J.S.A. 2A:18-61.1a. These findings and intent focus upon "pretexts, stratagems or means other than those provided" by the Anti-Eviction Act which landlords and owners use to remove blameless tenants, to profit from conversion to higher income rental or ownership interest in residential housing.
Appellants argue that they are protected by N.J.S.A. 2A:18-61.3b, which was added in 1986 and provides that a tenant of a landlord in residential housing may not be removed from the premises "by the owner's or landlord's successor in ownership or possession" except for good cause. This language was contained in the June 9 version of the combined bills, except for a few minor changes made as part of the Lesniak amendments which are not relevant to this discussion. Thus the heretofore mentioned June 9 statement was prepared when what became N.J.S.A. 2A:18-61.3b was already in the proposed legislation. Neither the statement nor the proposed legislation mentioned mortgagees or otherwise suggested that "owner's or landlord's successor in ownership or possession" was meant to cover mortgagees. Similarly, the legislative findings and intent that became N.J.S.A. 2A:18-61.1a, were also contained in the June 9 combined bills, and that language was not amended thereafter. There too, no mention or suggestion was made that the 1986 amendments would affect mortgagees or that mortgagees' property rights had been considered.
*438 The reasoning employed in Guttenberg when concluding that the Anti-Eviction Act's reference to "landlord or owner" did not include mortgagees within its scope is just as compelling when analyzing the scope of N.J.S.A. 2A:18-61.3b. In Guttenberg, the Court reasoned that the legislature limited the terms "landlord or owner" to traditional landlord-tenant relationships which do not generally exist as to mortgagees except when a mortgagee acquires title at a foreclosure sale and the tenant thereafter attorns to the mortgagee. Guttenberg, supra, 85 N.J. at 630, 428 A.2d 1289. The court gave three illustrations of why "owners" were included: (1) an owner might lease an apartment house to one person who in turn rents each unit to tenants, (2) an agent of an owner may rent or lease residential units in the agent's name only, but both the agent and the owner have the same right to terminate the tenancy, and (3) an owner may terminate his or her status as a landlord by removing rental units from the market by converting to condominiums or cooperatives, boarding up permanently or demolishing the building or units. Id. at 629-630, 428 A.2d 1289. Under all three illustrations, an action against the landlord without joining the owner would not achieve the legislatively intended purpose of the Anti-Eviction Act.
The Legislative findings and intent in 1986, as expressed in N.J.S.A. 2A:18-61.1a, make clear that a landlord or an owner who engaged in a pretext or a stratagem to circumvent the Anti-Eviction Act would no longer be tolerated because the scope of the Act was being extended to include the successor in ownership or possession of the landlord or the owner. Whereas before the 1986 amendments only landlords and owners were covered by the scope of the Act, the amendments to N.J.S.A. 2A:18-61.3 extended the Act's coverage to the owner's and the landlord's successor in ownership or possession. This new language was intended to curtail the transfer of ownership or possession solely as a pretext or as part of a stratagem to circumvent the Act. No where in the 1986 amendments or the statements attached to the bills has it been suggested that *439 mortgagees have become part of the pretexts or stratagems to circumvent the Act or that they otherwise abuse their status as mortgagees. Where, as here, the Legislature has not made manifest an intent to place mortgagees within the scope of the Act, it is not the function of judges "to devise protective measures for tenants, but it is our function to effectuate the legislative intent expressed in its enactment." Guttenberg, supra, 85 N.J. at 628, 428 A.2d 1289.
Although the words in N.J.S.A. 2A:18-61.3b are broad enough to include mortgagees, a court shall not impute to the Legislature an intention to change established law in the absence of a clear manifestation of legislative intent. See Elberon Bathing Co. v. Ambassador Ins. Co., 77 N.J. 1, 18, 389 A.2d 439 (1978). See also Bradley v. Rapp, 132 N.J. Super. 429, 432-434, 334 A.2d 61 (App.Div.), certif. denied, 68 N.J. 149, 343 A.2d 437 (1975). Clearly the Legislature knows how to express a clear manifestation of its intent to overturn a Supreme Court decision, see, e.g., N.J.S.A. 2A:15-5.7 (overruling Kelly v. Gwinnell, 96 N.J. 538, 548, 476 A.2d 1219 (1984) (extending the dramshop rule, social host liability, to adult guests)). Similarly, the Legislature acted in a clear and unambiguous fashion by enacting L. 1987, c. 217 in response to our Supreme Court's decision in Phillips v. State, Dept. of Defense, 98 N.J. 235, 251, 486 A.2d 318 (1985), inviting the Legislature "to consider the seemingly anomalous and conflicting policies that have resulted from the retention of the military compensation law and the elimination of immunity for members of the military." Here, we find no clear manifestation that the Legislature intended to alter the longstanding property rights of legitimate mortgagees.
Even though the legislative history, the legislation itself, and the statements attached to the bills which were enacted into law have not mentioned the word "mortgagees," two legislators have submitted affidavits executed four years after the amendments were enacted, asserting that it was their personal intention to include mortgagees. These affidavits *440 were properly rejected by the trial court. They afforded little or no guidance to the court. See State v. Dalglish, 86 N.J. 503, 512, 432 A.2d 74 (1981); Gauntt v. Mayor and Council of City of Bridgeton, 194 N.J. Super. 468, 483 n. 1, 477 A.2d 381 (App.Div. 1984); International Union of Elec., Radio and Machine Workers, AFL-CIO-CLC v. Westinghouse Elec. Corp., 631 F.2d 1094, 1103-04 (3d Cir.1980), cert. denied, 452 U.S. 967, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981). To be sure, Guttenberg made clear that any legislative intent to modify "established fundamental property rights" of mortgagees would require a "straightforward approach." 85 N.J. at 627, 428 A.2d 1289. In Guttenberg, as in the present case, it is significant that neither the 1986 legislation nor any accompanying statement contains any reference that a mortgagee's rights were intended to be affected.
In addition, Guttenberg suggested that the Legislature may have the power to subordinate a mortgagee's rights to subsequent lessee-occupants only prospectively. 85 N.J. at 628, 428 A.2d 1289. Any retroactive subordination of a mortgagee's right to possession may well violate the mortgagee's due process rights and the contract clauses of the State and federal constitutions. 85 N.J. at 632, n. 7, 428 A.2d 1289. See also Stamboulos v. McKee, 134 N.J. Super. 567, 575, 342 A.2d 529 (App.Div. 1975). Despite this warning in Guttenberg, the 1986 amendments became effective the day the Governor gave approval on October 29, 1986. We do not decide the issues with respect to retroactivity and due process because we have based our decision on other grounds.
Finally, we reject the Josephsons' contention that because Chase accepted a deed from the Werners as defaulting mortgagors in lieu of foreclosure, that altered Chase's status from a mortgagee to that of an unprotected owner under the Anti-Eviction Act. As noted earlier, Chase was entitled to possession upon default under the bond and mortgage. When a mortgagee accepts a conveyance by deed from defaulting mortgagors *441 in lieu of foreclosure, the mortgagee has simply exercised one of its options as a mortgagee. But acquisition of the property by Chase by deed in lieu of foreclosure is not the kind of change in ownership contemplated by the Anti-Eviction Act because Chase as mortgagee owner has never established a landlord-tenant relationship with the Josephsons since there has been no attornment.
In addition, acceptance of the deed represents a settlement of the foreclosure litigation. By giving a deed, the Werners were able to reduce or to avoid any deficiency judgment. Chase was able to reduce its unreimbursable foreclosure expenses as well as further delays. In so doing, both were furthering the long standing public policy of this State which encourages settlement of cases. Noland v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990); Hagrish v. Olson, 254 N.J. Super. 133, 137-138, 603 A.2d 108 (App.Div. 1992). We perceive no sound reason to depart from upholding the public policy of this State.
We conclude that all issues raised in these appeals are without merit. We affirm the order for ejectment in favor of Chase. We remand the Maryland National case to the trial court for the entry of an order for possession and/or ejectment.