MELTON BROS., INCORPORATED, a corporation, and GEORGE MELTON and PETER MELTON, complainants-respondents,

*v.*

PHILADELPHIA FIRE AND MARINE INSURANCE COMPANY, a corporation, defendant-appellant.

MELTON BROS., INCORPORATED, a corporation, and GEORGE MELTON and PETER MELTON, complainants-respondents,

*v.*

GLOBE AND RUTGERS FIRE INSURANCE COMPANY, a corporation, defendant-appellant.

MELTON BROS., INCORPORATED, a corporation, complainant-respondent,

*v.*

NEWARK FIRE INSURANCE COMPANY, a corporation, defendant-appellant.

[Submitted October 27th, 1928. Decided February 4th, 1929.]

154

*Mr. Arthur T. Vanderbilt,* for the appellant.

*Messrs. Kinkead & Klausner,* for the respondents.

The opinion of the court was delivered by

TRENCHARD, J.

These three separate suits in chancery were begun by the complainant, Melton Bros., Incorporated, and all three defendant companies have appealed from decrees in favor of the complainant.

The suits were consolidated for the purpose of hearing in the court below, and pursuant to a stipulation they have been argued here as one suit, and the pleadings, evidence, decree and further proceedings in the suit against the Philadelphia Fire and Marine Insurance Company have been laid before us with the statement that they "are identical, so far as the issues on this appeal are concerned," with those in the other cases.

The general situation was this:

Defendants, prior to December 15th, 1925, issued to complainant policies insuring complainant against loss or damage by fire to its merchandise, and store furniture and fixtures, contained in the building located at No. 620 Washington street, Hoboken, New Jersey. On December 15th, 1925, complainant suffered a loss by fire, and, pursuant to the provisions of the policies, complainant and defendants entered into an appraisal agreement. Therein complainant designated S. Walter Silverman as its appraiser and defendants designated Davis Weinstock as their appraiser. The appraisal agreement

referred to the appraisers the determination of the sound value and loss to the items of the insured property as particularly described in the policies, and authorized them to appoint an umpire to whom they were to submit their differences only; and the agreement provided that it should not be a waiver of "any of the provisions or conditions of the said policy or policies of insurance, or any forfeiture thereof, or the proof of such loss and damage required by the policy or policies of insurance thereon."

On April 10th, 1926, the appraisers agreed upon Bernard Ginsberg as umpire. On April 28th, 1926, the award was made, the umpire and the appraiser appointed by the insurance companies signing the same, the appraiser appointed by the complainant refusing to do so. Within a short time thereafter, and before these suits were brought, complainant sold a considerable part of the damaged property. In December, 1926, the complainant brought suits in the supreme court to recover on the policies issued by the several defendants, and then filed the present bills to reform the policies as to the name of the insured, and to restrain the defendant companies from setting up as a defense in the actions at law the award to which we have referred. The bills, so far as the latter phase thereof is concerned, were based upon the averments that the appraisers had not disagreed, that the umpire had acted fraudulently and also prematurely, and that the report of the loss as appraised by the umpire and the companies' appraiser was the result of joint fraud on their part.

The vice-chancellor advised decrees granting the reformation of the policies prayed for. That was done with the consent of the defendant companies expressed at the hearing, and that phase of the decrees was not further in controversy at the hearing, and is not in controversy on these appeals of the defendant companies.

The controversy on these appeals is respecting that part of the decrees which adjudged such award void and restrained the defendants from setting up the award as a defense in the actions at law.

The defendants first argue, with much force, that the complainant, having failed to repudiate the award and demand a

re-appraisal within a reasonable time, and having sold a con-
siderable part, if not all, of the damaged property, so changed
the *status quo* as to be estopped from attacking the validity
of the award nine months after its rendition. After reflection,
we are unwilling to disturb the decrees upon that ground, al-
though the mere statement of it makes it evident that decrees
which set aside awards in such circumstances must be exam-
ined with great care and caution.

The appraisal agreement provides that the appraisers

"shall ascertain * * * the sound actual cash value of the property
of said party of the first part on the 15th day of December, 1925,
which is more particularly described in the policies as per form at-
tached, as well as the actual direct loss and damage caused thereto
by a fire which occurred on that day, and * * * that the said two
appraisers shall first select a competent and disinterested person who
shall act as umpire, and the said two appraisers together shall then
estimate and appraise the loss, stating separately sound value and
damage to each item, and failing to agree, shall submit their differ-
ences only to the umpire. An award, in writing, so itemized, of any
two, when filed with the insurance companies above designated, shall
determine the amount of sound value and of loss or damage."

The coverage provisions of the Philadelphia Fire and
Marine Insurance Company's policy read as follows:

"$750.00. On merchandise consisting principally of that usual to
the confectionery business, including stock manufactured, unmanu-
factured and in process of manufacture, including full and empty
packages, boxes, samples and supplies, the property of the insured,
or held in trust or in commission, or sold but not delivered or re-
moved.
"$1,750.00. On store furniture and fixtures, including counters,
shelving, racks, scales, show cases, cash registers, and all such im-
plements and utensils used in the insured's business.
"All while contained in the brick building, occupied as stores and
dwellings situated No. 620 Washington street, Hoboken, N. J., 80%
co-insurance clause attached, applying to each item separately."

The learned vice-chancellor did not find any fraud; on the
contrary he found that there was no fraud.

An examination of his conclusions, in connection with the
decrees, shows that he advised the decrees setting aside the
award because, as he found (1) the appraisers did not to-
gether estimate and appraise the loss stating separately sound

value and damage to each item; (2) because the umpire proceeded to act before the appraisers disagreed as to the loss, and before the appraisers submitted their differences only to the umpire; (3) because the award was not itemized; and (4) because the umpire and the appraiser appointed by the insurers were not competent and disinterested persons.

Our findings from the evidence differ materially from those of the court below, and we are constrained to think that the decrees cannot be supported.

At the outset it is to be noted that, while the person selected by the appraisers under the appraisal agreement in question is referred to as an umpire, he is not strictly such, but is rather a third appraiser. *Dennis* v. *Standard Fire Insurance Co., 90 N. J. Eq. 419.* We shall, however, for purposes of convenience, refer to him as the umpire.

We come now to the principles and reasons upon which our decision rests.

Every reasonable intendment and presumption comes to the support of an award in arbitration proceedings. The attacking party has the burden of establishing the invalidity of the award by clear proof, for an award will not be lightly set aside. *Caledonian Insurance Co.* v. *North Dutch Reformed Church, 96 N. J. Eq. 342; McQuaid Market House Co.* v. *Home Insurance Co., 147 Minn. 254.*

We find no satisfactory proof that the appraisers did not together estimate and appraise the loss, stating separately sound value and damage to each item. On the contrary, we find satisfactory proof that they did, in substance and effect. The appraiser for the insured, upon whose testimony the conclusion below rested, admitted that he "checked up" his own "item by item" statement, and then went to the other appraiser's office and "tried to straighten it out with him."

The appraisers were both experienced appraisers, and so was the umpire. The testimony was to the effect that on April 10th, 1926, after the umpire had been selected, the appraisers together went to the scene of the loss, were each furnished with a copy of an inventory of the merchandise, and furniture and fixtures, claimed to have been damaged or destroyed, and examined such property as could be found,

and each then, or at subsequent meetings, examined bills, made notes, figures and check marks on his copy, and afterwards each copy was handed to and considered by the umpire before the award was made. We think that this testimony, considered in the light of the documentary exhibits, justifies the conclusion that the appraisers substantially complied with the requirement of the appraisal agreement that the appraisers together estimate and appraise the loss, stating separately sound value and damage to each item. Substantial compliance with such a provision is all that is required.

We find, also, that the appraisers did disagree as to the loss before the umpire acted in making the award.

The view of the vice-chancellor to the contrary was rested, in large part certainly, upon an acceptance of the testimony of the appraiser appointed by the insured and a refusal to credit that of the other appraiser and the umpire. We think that course was not justified, especially in view of the fact that the testimony of the latter was strongly corroborated by the admission of the appraiser for the insured in a letter written by him on April 21st, prior to the award, that the appraisers "disagree" in the appraisal.

The evidence shows to our satisfaction, after giving due consideration to the conflicting testimony, that, on April 10th, after their appointment, the appraisers went together to the scene of the loss and were each furnished by the insured with a copy of the inventory of the merchandise, and furniture and fixtures, claimed to have been damaged or destroyed; that they then examined the property scheduled so far as it could be found; that then or thereafter they examined bills for merchandise and made figures on the entire loss and concluded that "we cannot agree," and submitted the matter to the umpire, who afterwards participated in the award. That, we think, constituted a disagreement of the appraisers as to the loss before the umpire acted. *Broadway Insurance Co.* v. *Doying, 55 N. J. Law 569; American Central Insurance Co.* v. *Landau, 62 N. J. Eq. 73; Garrebrant* v. *Continental Insurance Co., 75 N. J. Law 577; Caledonian Insurance Co.* v. *North Dutch Reformed Church, 96 N. J. Eq. 342.* That the vice-chancellor's conclusion to the contrary, resting as it

does upon the testimony of Silverman, the appraiser appointed by the insured, is a mistaken one, is demonstrated by a critical examination of Silverman's testimony. He testified, "I went to Mr. Weinstock's office on numerous occasions, and tried to straighten it out with him." Weinstock was the other appraiser. Silverman further testified that he was at Weinstock's office on April 15th, 17th and 20th, and we have pointed out that on April 21st he wrote the letter that he would be at Weinstock's office the next day "for the express purpose to find out why you disagree regarding the above matter, so the appraisal can come to a close." It further appeared that, at the meeting with the umpire on April 28th, when the award was made, the appraisers were still far apart, Silverman's figures as to the loss being very much greater than those of Weinstock's, and that both refused to change their figures, when the umpire asked them to try to get together, before the award was made.

In this connection see the case of *American Central Insurance Co.* v. *Landau, supra,* where an award was upheld made pursuant to an appraisal agreement in all essentials similar, so far as this point is concerned, to the one in the present case. There the fourth head-note reads:

"The articles injured by fire were numerous, and situate in several different apartments. The two appraisers examined the greater part in number and value of the articles and disagreed as to the damage, and on grounds which would prevent their agreeing as to the damage to the remaining articles;— *Held,* that in order to give jurisdiction to the umpire to take part in the appraisement it was not necessary that the appraisers should disagree as to the damages to each and every article injured."

In the opinion Vice-Chancellor Pitney said at page 96:

"It was not, in my judgment, necessary or even worthwhile at that time, after having disagreed so largely as to the damage done to the machinery in room No. 1, that they should, before calling in the umpire, proceed through the other rooms and look at the articles there, or so much of them as remained unconsumed. It was a mere waste of time to do so, and it was work that could properly be deferred until the umpire came

in. If they had agreed upon some of the articles, such agreement would not have saved the calling in of the umpire. Besides, there is no probability that they would have so agreed."

Also we believe that the decree below cannot be justified upon the theory that the umpire acted before the appraisers had submitted their "differences only" to the umpire.

It is true that the umpire participated in the award for entire loss. That was done, and we think rightly, because the testimony, when considered in the light of the documentary evidence to which we have referred, shows that the appraisers had each examined the property claimed to have been damaged or destroyed, so far as it could be found, had examined bills for unidentified property, had made figures in detail as to the loss on the various articles for which claim was made, and had submitted those figures, showing a complete and wide disagreement, to the umpire before the award was made.

Moreover, the evidence fails to show, as far as we can find, a single instance in which the appraisers agreed on the damage or loss in respect to any of the items of merchandise, and furniture and fixtures, identified or unidentified, covered by the policy. Indeed it does not seem to be contended that they did. The appraiser for the insured testified in effect that they did not agree on anything. This view is strengthened by the fact that at the meeting on April 28th, when the award was made, the figures as to total loss made by the appraiser appointed by the insured were very much greater than those of the appraiser appointed by the insurers, and that both appraisers refused to change their figures, when the umpire asked them to try to get together, before the award was made.

Nor do we think that the decrees can be supported upon the theory that the award was not itemized.

The precise contention of the complainant on this point is that the award must be set aside because it did not itemize "every distinct piece of property involved in the fire."

The award, signed by the umpire and the appaiser appointed by the insurer, states that they had "appraised and determined the actual cash value of each item of said property on

the 15th day of December, 1925, and the actual direct loss and damage thereto on that day," and then follows a statement showing separately in words and figures the total actual net cash value of, and the total actual direct loss and damage to, the respective general items covered by the policy.

We think that such an award should not be set aside, in the absence of prejudice or injustice to the complaining party, upon the contention that it was not in compliance with the requirement of the appraisal agreement that the sound actual cash value of, and the actual direct loss and damage to, the property described in the policies, shall be itemized in the award. *Caledonian Insurance Co.* v. *North Dutch Reformed Church, 96 N. J. Eq. 342; McQuaid Market House Co.* v. *Home Insurance Co., 147 Minn. 254; 180 N. W. Rep. 97; Innis* v. *Fireman's Fund Insurance Co., 218 Mich. 253; 187 N. W. Rep. 268; Boutross* v. *Palatine Insurance Co., 100 Kan. 574; 165 Pac. Rep. 1069.* Here, as we believe, there was no showing of prejudice or injustice. In *Caledonian Insurance Co.* v. *North Dutch Reformed Church, supra,* it was urged that the award should be set aside because not itemized. It was there held in effect that the only itemizing of the loss which was necessary was that indicated by the policies involved. The court said at page 345:

"The insurance company cannot complain that its appraiser was not sufficiently consulted, if the award appears to be an award of the umpire upon questions which were in dispute between the appraisers, as appears in this case. We can see no reason for the separation and the itemizing of the damage to the church and Sunday school, as the policy covered both, and was not apportioned between the two. An award made as this was made will not be set aside unless there is clear proof of injustice done to the complainant."

Finally it is said that the umpire and the appraiser appointed by the insurers were not competent and disinterested persons.

Upon this phase of the case it is sufficient to say that in our judgment the evidence fails to support that charge.

The charge that the umpire was not competent and dis-

interested appears to be without support on a critical examination of the evidence.

The charge that the appraiser appointed by the insurers was not competent and disinterested has as its only basis the fact that he was zealous for the rights of the insurance companies. But an award is not invalidated because the appraiser is merely zealous for what *he* conceives to be the rights of the party who nominated him. *American Central Insurance Co.* v. *Landau, supra.*

Upon the whole case we consider that none of the matters urged justify the court in setting aside the award, in view of the rule which is, that where the insured has sustained a loss, and an award is made by an umpire and one of the appraisers duly appointed pursuant to the appraisal agreement, the court will not weigh the technicalities of the method of arriving at the award and making the appraisal, when the appraisers and umpire were competent and disinterested and no injustice or fraud has been committed. *Caledonian Insurance Co.* v. *North Dutch Reformed Church, supra.*

The result is that the decrees under review will be reversed in so far as they adjudge and declare void the award and enjoin the defendants from setting up the award in the suits at law.

The defendants are entitled to costs in this court.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Kalisch, Katzenbach, Campbell, Lloyd, White, Van Buskirk, McGlennon, Kays, Hetfield, Dear, JJ. 13.