F I L E D
United States Court of Appeals
Tenth Circuit

July 19, 2006

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SALT LAKE TRIBUNE
PUBLISHING COMPANY, LLC,

Plaintiff-Appellant,

v.

MANAGEMENT PLANNING, INC.;
MEDIANEWS GROUP, INC.;
KEARNS-TRIBUNE, LLC,

Defendants-Appellees.

No. 05-4316

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:03-CV-565-TC)

---

Seth P. Waxman of Wilmer, Cutler, Pickering, Hale, and Dorr, LLP, Washington, D.C. (A. Stephen Hut, Jr., Patrick J. Carome, David S. Cohen of Wilmer, Cutler, Pickering, Hale, and Dorr, LLP, Washington, D.C., and Milo Steven Marsden of Dorsey & Whitney, LLP, Salt Lake City, Utah, with him on the briefs), for Plaintiff-Appellant.

Kevin T. Baine of Williams & Connolly, LLP, Washington, D.C. (Paul B. Gaffney of Williams & Connolly, LLP, James S. Jardine and Allan T. Brinkerhoff of Ray, Quinney & Nebeker, Salt Lake City, Utah, with him on the briefs), for Defendants-Appellees, MediaNews Group, Inc. and Kearns-Tribune, LLC.

Robert S. Clark and D. Craig Parry of Parr, Waddoups, Brown, Gee & Loveless, Salt Lake City, Utah, filed a brief on behalf of Defendant-Appellee, Management Planning, Inc.

Before **BRISCOE, BALDOCK,** and **EBEL**, Circuit Judges.

**BRISCOE**, Circuit Judge.

This appeal arises out of the efforts of Salt Lake Tribune Publishing Company ("Tribune Publishing") to reacquire The Salt Lake Tribune newspaper. An appraisal from Management Planning, Inc., ("MPI"), which valued the assets of The Salt Lake Tribune, is at the center of the present controversy. Tribune Publishing appeals the district court's dismissal of its complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and REVERSE and REMAND.

I.

Tribune Publishing has an Option Agreement to purchase The Salt Lake Tribune from MediaNews Group, Inc., and Kearns-Tribune, LLC, (collectively "MediaNews"). Under the Option Agreement, Tribune Publishing may reacquire the newspaper by paying the exercise price, which is the fair market value of the newspaper. The Option Agreement specifically defines "fair market value." Option Agreement ¶ 2(a), Aplt. App. at 86-87.

If the parties cannot agree on the fair market value, the Option Agreement prescribes an appraisal procedure. Each party appoints an appraiser to calculate the fair market value of the newspaper's assets. If one appraised value is 110%

greater than the other appraised value, then the two parties select a third appraiser. The fair market value depends upon the three appraised values:

> [T]he Fair Market Value of the Tribune Assets shall be equal to the average of the two closest Appraised Values reported by the three Appraisers, provided, however, that if the highest and the lowest of such three Appraised Values differ from middle by an equal amount, then the Fair Market Value of the Tribune Assets shall be equal to such middle determination.

Option Agreement ¶ 2(b), Aplt. App. at 87 (emphasis omitted). The Option Agreement further provides that "[e]ach determination of the Fair Market Value of the Tribune Assets . . . in accordance with the appraisal provisions of this paragraph 2 shall be final, binding and conclusive." Option Agreement ¶ 2(d), Aplt. App. at 87. Although the parties agreed that each determination of the fair market value in accordance with paragraph 2 would be final and binding, the Option Agreement expressly allowed the parties to enforce the agreement in court. The Option Agreement states that "the parties shall be entitled to seek an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement in any court of the United States" and seek other remedies at law or in equity. Option Agreement ¶ 13, Aplt. App. at 91. Tribune Publishing's appraiser valued the newspaper at $218 million, while MediaNews' appraiser valued it at $380 million. Because MediaNews' appraised value was 110% greater than that from Tribune Publishing, the parties agreed to a third appraisal by MPI.

The parties entered into an Appraisal Agreement with MPI, which requires MPI to comply with professional appraisal standards. The parties agreed to seek judicial review of any conflicts that arise between the terms of the Option Agreement and professional appraisal standards. MPI appraised the assets at $331 million.

Tribune Publishing filed the present action on June 24, 2003, against MediaNews Group, Kearns-Tribune, and MPI. Tribune Publishing asserts that MPI's appraisal used a different definition of "fair market value" than the Option Agreement. First Am. Compl. ¶¶ 41, 44, Aplt. App. at 126-127. Tribune Publishing further alleges that MPI ignored evidence relevant to valuing the newspaper assets. First Am. Compl. ¶¶ 41, 43, Aplt. App. at 126-127. Tribune Publishing maintains that MPI violated professional appraisal standards, even though MPI agreed to comply with those standards in the Appraisal Agreement. First Am. Compl. ¶¶ 41, 44, Aplt. App. at 126-127. Tribune Publishing seeks judicial invalidation of MPI's appraisal and damages from MPI caused by the issuance of its appraisal.

Earlier in this case, the district court granted a prior Rule 12(b)(6) motion to dismiss filed by MediaNews, concluding that MPI's appraisal was an arbitration under the Federal Arbitration Act ("FAA"). We reversed, holding that the appraisal was not an arbitration under the FAA. Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc., 390 F.3d 684, 692 (10th Cir. 2004) ("Tribune Publ'g

II")[1].

On remand, the district court dismissed Tribune Publishing's first amended complaint under Rule 12(b)(6), again treating MPI's appraisal as an arbitration. Applying New Jersey law, the district court concluded that the New Jersey Supreme Court would treat an appraisal like an arbitration. The district court reasoned that, under New Jersey law, an appraisal, like an arbitration, is not subject to judicial review absent allegations of fraud, corruption, or similar wrongdoing. Then, by applying this standard to MPI's appraisal, the district court concluded that it could not review Tribune Publishing's challenge to MPI's appraisal. The district court also dismissed Tribune Publishing's claims against MPI, holding that the alleged injury was not ripe because Tribune Publishing has not paid the allegedly inflated purchase price.

---

[1] The present appeal is the third appeal that has come before us in this case. See Salt Lake Tribune Publ'g Co. v. AT&T Corp., 320 F.3d 1081 (10th Cir. 2003) ("Tribune Publ'g I"); Tribune Publ'g II, 390 F.3d at 692. In Tribune Publishing I, we considered Tribune Publishing's appeal from the denial of its preliminary injunction. 320 F.3d at 1083. We concluded that there is a substantial likelihood that Tribune Publishing will prevail in a trial to enforce its rights under the Option Agreement. Id. at 1103. But we held that Tribune Publishing had not demonstrated that it has a right to continue to manage the newspaper after the termination of the Management Agreement and before it reacquired the newspaper assets pursuant to the Option Agreement. Id.

We also addressed a related matter in which we denied a petition for a writ of mandamus to compel the district judge then assigned to the case to disclose certain facts, including his financial contributions to his church. In re McCarthey, 368 F.3d 1266, 1269-70 (10th Cir. 2004).

II.

On appeal, Tribune Publishing argues that the district court misinterpreted New Jersey law in dismissing its claims seeking judicial invalidation of MPI's appraisal. Tribune Publishing further argues that the district court erred in its ripeness analysis in dismissing Tribune Publishing's claims for damages.

We review a district court's decision dismissing a complaint under Rule 12(b)(6) de novo. E.g., Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003). We accept as true

> all well-pleaded factual allegations in the . . . complaint . . . and view[ ] [them] in the light most favorable to the nonmoving party. A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (internal quotation marks and citations omitted). "[A] dismissal under Rule 12(b)(6) is a harsh remedy which must be cautiously studied. . . ." Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal quotation marks omitted).

*A. Dismissal of claims seeking judicial invalidation of MPI's appraisal*

The parties dispute whether a court may review MPI's appraisal for reasons other than fraud, corruption, or similar wrongdoing under New Jersey law.[2]

---

[2] We have previously determined that New Jersey law applied to the Appraisal Agreement, Tribune Publ'g II, 390 F.3d at 693, although Delaware law applies to the Option Agreement. Option Agreement ¶ 15, Aplt. App. at 91. As

(continued...)

Specifically, the parties disagree whether a court may vacate an appraisal if the appraiser committed a mistake of law or failed to consider all of the relevant evidence. Applying New Jersey law, we hold that the district court may review MPI's appraisal for a mistake of law or failure to consider the relevant evidence.

*1. New Jersey law*

We conclude that the district court misinterpreted New Jersey law in determining the standard of judicial review for appraisals.

When proceeding under diversity jurisdiction, federal courts "have the duty to apply state law as announced by the state's highest court." Miller v. Auto. Club of N.M., Inc., 420 F.3d 1098, 1128 (10th Cir. 2005) (internal quotation marks omitted); Phillips v. State Farm Mut. Auto. Ins. Co., 73 F.3d 1535, 1537 (10th Cir. 1996). Where the state's highest court has spoken, we accept "its pronouncement . . . as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 236 (1940). When a state's intermediate appellate court criticizes a decision from that state's supreme court, it is not "our position to predict that the [state] Supreme Court would

---

[2](...continued)
the parties and the district court did not consider whether the analysis would differ under Delaware law, we will not reach this issue. See, e.g., R. Eric Peterson Constr. Co. v. Quintek, Inc. (In re R. Eric Peterson Constr. Co.), 951 F.2d 1175, 1182 (10th Cir. 1991).

overrule its precedent in the complete absence of any indication from that court of its inclination to do so." Ag Servs. of Am., Inc. v. Nielsen, 231 F.3d 726, 735-36 (10th Cir. 2000) (emphasis in original). "No deference is given to the federal district court's views of state law, which we review de novo." Colo. Visionary Acad. v. Medtronic, Inc., 397 F.3d 867, 871 (10th Cir. 2005).

Tribune Publishing contends that the district court erred by disregarding the New Jersey Supreme Court's decision in Elberon Bathing Co. v. Ambassador Ins. Co., 389 A.2d 439 (N.J. 1978), and by treating MPI's appraisal like an arbitration. In Elberon, the New Jersey Supreme Court reviewed an appraisal when an appraiser and the umpire allegedly committed a mistake of law and failed to consider all of the relevant evidence. Id. at 442-43, 446. Contrary to MediaNews' assertions, the New Jersey Supreme Court's decision in Elberon is binding on us.

MediaNews argues that we should interpret Elberon narrowly by limiting it to a statutory appraisal, but the New Jersey Supreme Court did not limit the decision in this way. Elberon involved an insurance appraisal to value a building destroyed by a fire. Id. at 439-40. The insurance policy and statute required the appraisers to deduct depreciation from the replacement cost to calculate "actual cash value" of the assets. Id. at 441-42 (citing N.J. Stat. Ann. § 17:36-5.19). But one appraiser and the umpire failed to deduct depreciation. In holding that the appraiser and the umpire committed a mistake of law, the New Jersey Supreme

Court vacated the appraisal. Throughout its decision, the New Jersey Supreme Court emphasized the insurance policy, as well as the statute governing fire insurance policies. See Elberon, 389 A.2d at 445 ("In failing to make such a [depreciation] deduction, the appraisers violated the terms of the policy and committed a mistake of law.") (emphasis added). As the court relied on both the policy and the statute, we do not read Elberon as applying only to statutory appraisals.

MediaNews further argues that the standard of judicial review that applies to arbitrations should also apply to appraisals. MediaNews relies on two cases. The first case is a New Jersey Supreme Court decision that concerned an arbitration under the New Jersey Arbitration Act. Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 640 A.2d 788 (N.J. 1994) (per curiam). In Tretina, the New Jersey Supreme Court held that a court may not set aside an arbitration except for "fraud, corruption, or similar wrongdoing on the part of the arbitrators." Id. at 793. The second case MediaNews cites is a decision from New Jersey's intermediate appellate court, the Superior Court of New Jersey, Appellate Division ("Appellate Division"), which involved an agreement to "'value the stock and to arbitrate a binding settlement.'" Cap City Prods. Co. v. Louriero, 753 A.2d 1205, 1206, 1210 (N.J. Super. Ct. App. Div. 2000). The Appellate Division stated that Elberon "must be deemed modified by the subsequent holding in Tretina." Cap City, 753 A.2d at 1210.

We turn first to Tretina.  Contrary to MediaNews' argument, we do not read the New Jersey Supreme Court's decision in Tretina as somehow modifying Elberon.  Nor do we read Tretina as applying to appraisals.  In Tretina, the New Jersey Supreme Court held that a court may not vacate an arbitration award due to an arbitrator's mistake of law.  640 A.2d at 792-93.  Tretina neither mentioned Elberon nor discussed an appraisal.  In fact, Tretina "involves statutory arbitration [subject to the Arbitration Act], not common-law arbitration."  640 A.2d at 794.  Given that Tretina does not even apply to all arbitrations, it seems highly unlikely that the New Jersey Supreme Court intended Tretina to apply to all appraisals, especially since the court's decision did not even mention appraisals.

We next address Cap City, which MediaNews cites as clarifying the standard of judicial review applicable to appraisals.  In Cap City, the Appellate Division concluded that the New Jersey Supreme Court's ruling in Tretina modified its prior ruling in Elberon, even though Tretina dealt with an arbitration and Elberon dealt with an appraisal:

> Tretina does not represent a narrow holding applicable only to a specific case before the Supreme Court.  Rather, it lays out a broad, strong policy . . . .  To the extent that statements in prior cases such as Elberon Bathing Co. v. Ambassador Insurance Co., 77 N.J. 1, 17, 389 A.2d 439 (1978), Levine v. Wiss & Co., 97 N.J. 242, 248, 478 A.2d 397 (1984) or Lakewood Township Municipal Utilities Authority v. South Lakewood Water Co., 129 N.J. Super. 462, 471, 324 A.2d 78 (App. Div. 1974), suggest a different principle, or reach a different conclusion because the independent party performing the decision-making function is termed something other than an arbitrator, those cases must be deemed modified by the subsequent

-10-

holding in Tretina.

Cap City, 753 A.2d at 1210. Applying the narrow standard of review from Tretina, the Appellate Division concluded that it could not vacate the decision-maker's valuation because of an alleged mistake of law. Cap City, 753 A.2d at 1206. We conclude that the New Jersey Supreme Court's decision in Elberon resolves the legal question presented in the case at bar, and the Appellate Division's decision in Cap City does not persuade us to abandon Elberon.

The Appellate Division's analysis in Cap City conflicts with several decisions from the New Jersey Supreme Court where it has distinguished arbitrations and appraisals based on whether the decision-maker has authority to make legal determinations. See Levine v. Wiss & Co., 478 A.2d 397, 400 (N.J. 1984); Elberon, 389 A.2d at 446-47. An arbitration "ordinarily . . . dispos[es] of the entire controversy between the parties, and judgment may be entered upon the award, whereas an appraisal establishes only the amount of loss and not liability." Elberon, 389 A.2d at 446. Moreover, "appraiser[s] . . . can make no legal determinations." Id. at 445. Based on the differences between appraisals and arbitrations, the New Jersey Supreme Court has applied different standards of judicial review for mistakes of law. While a court may not review an arbitration for an arbitrator's mistake of law, a court may review an appraisal for an appraiser's mistake of law. See id. at 445-46.

A subsequent decision from the Appellate Division further dilutes Cap

-11-

City's persuasive power. Two days after it decided Cap City, the Appellate Division applied Elberon in an appraisal case. See Ward v. Merrimack Mut. Fire Ins. Co., 753 A.2d 1214, 1221-22 (N.J. Super. Ct. App. Div. 2000). In Ward, the Appellate Division considered a challenge to an appraisal that the umpire failed to consider all of the relevant evidence, but it rejected the challenge as lacking factual support. Id. Without mentioning Cap City, the Appellate Division applied the standard of review for appraisals from Elberon. See id. Ward conflicts with the Appellate Division's assertion in Cap City that Tretina modified Elberon.

The New Jersey Supreme Court has not departed from its 1978 ruling in Elberon. Further, we have no reason to predict that the New Jersey Supreme Court would overrule Elberon because it has given no indication it would do so.

*2. Tribune Publishing's first amended complaint*

Tribune Publishing argues that MPI's appraisal should be set aside for four reasons:

(1) MPI committed a mistake of law by defining "fair market value" differently than the Option Agreement;

(2) MPI ignored evidence relevant to the valuation of the newspaper assets;

(3) MPI exceeded the authority conferred in the Option Agreement and the Appraisal Agreement by using a different definition of "fair market value" and by violating professional appraisal standards; and

(4) MPI displayed evident partiality in favor of MediaNews.

Aplt. Br. at 35, 41-45. Applying the New Jersey Supreme Court's decision from Elberon to MPI's appraisal, and accepting Tribune Publishing's allegations as true, we conclude that the district court may review the appraisal to determine whether MPI committed a mistake of law, failed to consider relevant evidence, or exceeded its authority.

The parties disagree whether MPI's appraisal is binding under the Option Agreement, which states that "[e]ach determination of the Fair Market Value . . . in accordance with the appraisal provisions of this paragraph 2 shall be final, binding and conclusive." Option Agreement ¶ 2(d), Aplt. App. at 87. When interpreting contracts, New Jersey courts "examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." State Troopers Fraternal Ass'n v. New Jersey, 692 A.2d 519, 523 (N.J. 1997). When the terms of a contract are unambiguous, as here, the court's function is "to enforce [the contract] as written and not to make a better contract for either party." Schenck v. HJI Assocs., 685 A.2d 481, 484 (N.J. Super. Ct. App. Div. 1996) (internal quotation marks omitted).

MediaNews contends that MPI's appraisal is binding and that no judicial review is permitted because paragraph 2(d) of the Option Agreement includes the words "final, binding and conclusive." Option Agreement ¶ 2(d), Aplt. App. at 87. MediaNews' interpretation fails for two reasons.

First, MediaNews' interpretation ignores paragraph 13 of the Option Agreement, which specifically allows the parties to enforce the Option Agreement in any court. A contract "must be read as a whole, without artificial emphasis on one section, with a consequent disregard for others." Borough of Princeton v. Bd. of Chosen Freeholders, 755 A.2d 637, 645 (N.J. Super. Ct. App. Div. 2000), aff'd, 777 A.2d 19 (N.J. 2001). The plain language of the Option Agreement demonstrates the parties' intent to allow the enforcement of the Option Agreement in any court. Paragraph 13 of the Option Agreement explicitly allows the parties to seek judicial review "to seek an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement in any court of the United States" and to seek "any other remedy to which they are entitled at law or in equity." Option Agreement ¶ 13, Aplt. App. at 91. MediaNews' interpretation of paragraph 2(d) would render paragraph 13 meaningless. See, e.g., Cumberland County Improvement Auth. v. GSP Recycling Co., 818 A.2d 431, 438 (N.J. Super. Ct. App. Div. 2003) (stating that a contract "should not be interpreted to render one of its terms meaningless"). Given the plain language in paragraph 13, we cannot agree with MediaNews' contention that MPI's appraisal is binding and no judicial review of the appraisal is permitted.

Second, MediaNews' interpretation conflicts with the plain language in paragraph 2(d), which makes the determination of a fair market value "final,

binding and conclusive" only when it is "in accordance with the appraisal provisions of this paragraph 2." Option Agreement ¶ 2(d), Aplt. App. at 87. "Disproportionate emphasis upon a word or clause or single provision does not serve the purpose of interpretation. Words and phrases are not to be isolated but related to the context and the contractual scheme as a whole." Newark Publishers' Ass'n v. Newark Typographical Union No. 103, 126 A.2d 348, 352-53 (N.J. 1956). Tribune Publishing has alleged that MPI disregarded the definition of fair market value in the Option Agreement. First Am. Compl. ¶¶ 41, 44, Aplt. App. at 126, 127. Were we to accept this allegation as true as we must in review of a Rule 12(b)(6) dismissal, MPI's appraisal would not be binding.

MediaNews concedes as much, acknowledging that a court could determine whether the parties violated the appraisal provisions in paragraph 2, but it contends that this does not include "a challenge to the judgments of appraisers who were properly selected." MediaNews Br. at 50 n.22. MediaNews cannot have it both ways. Just as a court has authority to review whether the parties violated paragraph 2, it may review whether MPI complied with paragraph 2, including the definition of fair market value. MediaNews' argument invites us to revise the Option Agreement in their favor, which, of course, we cannot do. See, e.g., Camden Bd. of Educ. v. Alexander, 854 A.2d 342, 349 (N.J. 2004).

In further support of its argument that the appraisal is binding, MediaNews cites Cap City, but the contract in Cap City is distinguishable from the contracts

-15-

in this case.  In Cap City, the parties agreed to "'mutually select a third party to value the stock [of a closed corporation] and to arbitrate a binding settlement.'" 753 A.2d at 1206.  The third decision-maker had authority to "value the stock and to arbitrate a binding settlement," regardless of the valuations from the party-appointed appraisers.  Id. at 1207.  Thus, in Cap City, the parties agreed that the third decision-maker had the authority to value the stock and to arbitrate a binding settlement.  Id. at 1206.

In contrast to the contract in Cap City, the Option Agreement did not authorize MPI to arbitrate.  MPI did not function as an umpire deciding between two appraisals.  Instead, MPI merely "supplied a data point" that the parties may use in determining fair market value.  Tribune Publ'g II, 390 F.3d at 690.  In our prior ruling in this case, we specifically discussed MPI's role in the appraisal procedure:

> SLTPC and MediaNews fashioned an agreement where, in the event that they could not agree on a price and their chosen appraisers were too far apart, a third appraiser would contribute a value that may, or may not, be used to calculate the exercise price. . . .
>
> Here, MPI's appraisal would by no means definitively settle the dispute between [Tribune Publishing] and MediaNews.  At most, MPI supplied a data point that the parties could use in establishing the exercise price. Under the terms of the Option Agreement, a scenario existed where the parties would not use MPI's report at all. . . .
>
> MPI was not asked to decide between two values established by [Tribune Publishing] and MediaNews, nor were they asked to assign independently a single value binding on the parties.  Indeed

-16-

the parties did not even agree to average MPI's figure with one or both of their own. The parties merely asked MPI to prepare a report evaluating the newspaper and establishing the Fair Market Value of the newspaper's assets, a value which the parties may, under certain circumstances, have used to fix the exercise price under the Option Agreement. MPI's report would not necessarily settle a dispute between SLTPC and MediaNews.

Id. at 690-91. Thus, the Option Agreement did not permit MPI, as the third appraiser, to set the fair market value on its own.

*a. Committing a mistake of law*

Accepting Tribune Publishing's allegations as true, the district court may review the appraisal to determine whether MPI committed a mistake of law.

A court may review an appraisal if it involves a mistake of law, but not if it involves a mistake of fact. Elberon, 389 A.2d at 446. Where the parties have negotiated specific terms in a contract, courts may review the appraisal for the appraiser's compliance with the contractual terms. E.g., Melton Bros., Inc. v. Philadelphia Fire & Marine Ins Co., 144 A. 726, 728 (N.J. 1929); Collings Carriage Co. v. German-Am. Ins. Co., 97 A. 726, 728 (N.J. Super. Ct. Ch. Div. 1916) (invalidating an appraisal because the appraiser "failed to comply with the requirements of the agreement of submission"). The interpretation of a contractual term, such as "fair market value," where its meaning is clear is a legal determination. See, e.g., Driscoll Const. Co., Inc. v. State, Dep't, 853 A.2d 270, 276 (N.J. Super. Ct. App. Div. 2004); Bosshard v. Hackensack Univ. Med. Ctr., 783 A.2d 731, 740 (N.J. Super. Ct. App. Div. 2001). An appraiser commits a

mistake of law in failing to follow a contractual provision.  See Elberon, 389 A.2d at 445.

In its first amended complaint, Tribune Publishing alleges that MPI's appraisal is invalid because its definition of "Fair Market Value" differed from the definition set forth in the Option Agreement.  First Am. Compl. ¶¶ 41, 48, Aplt. App. at 126, 128.  Accepting Tribune Publishing's allegations as true, MPI committed a mistake of law.

*b. Failing to consider all relevant evidence*

Additionally, the district court may review the appraisal to determine whether MPI failed to consider the relevant evidence.  Under New Jersey law, a court may set aside an appraisal where the appraiser fails to consider the relevant evidence.  See Elberon, 389 A.2d at 446 (vacating an appraisal where one appraiser and the umpire failed to consider the relevant evidence).

Tribune Publishing alleges that MPI failed to consider relevant evidence in its appraisal.  First Am. Compl. ¶¶ 41, 44, Aplt. App. at 126, 127.  The Appraisal Agreement allowed the parties to present evidence to MPI, and it required MPI to consult with them following release of its draft report.  Accepting these allegations as true, the district court may review the appraisal for MPI's failure to consider relevant evidence.

MediaNews disputes the factual allegations in the complaint, maintaining that MPI considered plaintiff's evidence in its report.  Despite MediaNews'

invitation, we do not weigh potential evidence when reviewing a dismissal pursuant to Rule 12(b)(6).  See, e.g., Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001).

*c. Exceeding its authority*

The district court may review the appraisal to determine whether MPI exceeded its contractual authority.

A court may review an appraisal where the appraiser exceeds the scope of his or her contractual authority.  See Levine, 478 A.2d at 399-400 (considering an accountant's valuation of a person's interest in a company as an appraisal where the accountant was bound by "professional standards governing accountancy") (internal quotation marks omitted).  A decision-maker exceeds his or her authority when he or she disregards the contractual limitations.[3]  See, e.g., N.J. Tpk. Auth. v. N.J. Tpk. Supervisors Ass'n, 670 A.2d 1, 8-9 (N.J. 1996); County Coll. of Morris Staff Ass'n v. County Coll. of Morris, 495 A.2d 865, 869 (N.J. 1985) ("The scope of an arbitrator's authority depends on the terms of the contract between the parties."); Commc'ns Workers of Am., Local 1087 v. Monmouth County Bd. of Soc. Servs., 476 A.2d 777, 780 (N.J. 1984) ("[T]he jurisdiction and authority of the arbitrator are circumscribed by and limited to the powers delegated to him.").  A contract may limit authority both in the "procedure that

_____

[3] Although these three cases considered contractual limitations on arbitrations, MediaNews has not argued that they are inapplicable to appraisals.

-19-

the arbitrator must apply in resolving disputes and the substantive matters that he may address." Commc'ns Workers, 476 A.2d at 780.

Tribune Publishing alleges that the Appraisal Agreement limited MPI's authority in three ways. First, the Appraisal Agreement required MPI to use the definition of "fair market value" from the Option Agreement. First Am. Compl. ¶¶ 32-35. Second, the Appraisal Agreement required MPI to comply with professional appraisal standards. Id. ¶¶ 32-35. Third, the Appraisal Agreement required MPI to alert the parties if the Option Agreement's definition of fair market value conflicts with professional appraisal standards so that the parties could seek judicial review. Id. ¶ 35. Accepting these allegations as true, Tribune Publishing has alleged that MPI exceeded its authority, and the district court may review MPI's appraisal on that ground.

*d. Evidencing partiality*

The parties discuss evident partiality as another ground for setting aside an appraisal, but Tribune Publishing has not alleged evident partiality, even when viewing its factual contentions in the most favorable light. On appeal, Tribune Publishing has not identified any paragraph in the amended complaint that alleges bias, the appearance of bias, or improper motive by MPI. In arguing that MPI displayed evident partiality in its briefs, Tribune Publishing merely restates its factual allegations that MPI applied the wrong definition of fair market value, violated professional appraisal standards, and failed to consider Tribune

-20-

Publishing's evidence. Tribune Publishing acknowledges that the allegations in its amended complaint are insufficient by maintaining that its "complaint alleges conduct by MPI that would lead a reasonable, well-informed observer to doubt substantially MPI's impartiality." Aplt. Br. at 45. Elsewhere, Tribune Publishing concludes that its allegations in the amended complaint "would raise serious questions in a reasonable person's mind about MPI's impartiality." Aplt. Br. at 46. Because Tribune Publishing has failed to allege evident partiality in its first amended complaint, we have no basis for directing the district court to review MPI's appraisal on that ground.

*B. Dismissal of claims against MPI for ripeness*

Next, we turn to the district court's dismissal of Tribune Publishing's claims against MPI. We conclude that Tribune Publishing's claims for breach of contract and breach of fiduciary duty against MPI are ripe, even though its claim for damages from the allegedly inflated purchase price is not ripe.

"We review the district court's resolution of the ripeness issue de novo." Skull Valley Band of Goshute Indians v. Nielson, 376 F.3d 1223, 1238 (10th Cir. 2004), cert. denied, 163 L. Ed. 2d 626 (2005). The ripeness doctrine stems from "the 'cases and controversies' requirement in Article III, . . . [and it] also reflects important prudential limitations on a court's exercise of jurisdiction." Morgan v. McCotter, 365 F.3d 882, 890 (10th Cir. 2004) (citing Coal. for Sustainable Res., Inc. v. U.S. Forest Serv., 259 F.3d 1244, 1249 (10th Cir. 2001)). "Determining

whether the issues presented by this case are ripe for review requires us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Morgan, 365 F.3d at 890 (internal quotation marks omitted).  We have described the fitness inquiry as "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  Id. at 890-91 (internal quotation marks omitted).  We have described the hardship inquiry as "whether the challenged action creates a direct and immediate dilemma for the parties."  Id. (internal quotation marks omitted).

The district court concluded that Tribune Publishing's claims of breach of contract and breach of fiduciary duty against MPI are not ripe because Tribune Publishing has not paid the allegedly inflated purchase price, and it is not clear whether Tribune Publishing will have a second closing date after failing to close by the previously agreed date.[4]  The district court focused on Tribune Publishing's claim for two kinds of losses:  (1) attorney fees and expert fees, and (2) inflated purchase price for the newspaper assets "if MPI's defective appraisal is not set aside."  Aplt. Br. at 53-54.  The district court held that Tribune Publishing's damage claim for the inflated purchase price is not ripe, and it did

---

[4] Tribune Publishing informed us at oral argument that MediaNews has conceded in Salt Lake Tribune Publ'g Co. v. AT&T Corp., No. 2:00-CV-936 (D. Utah), that Tribune Publishing will have the opportunity to close if MPI's appraisal is set aside.

not determine whether Tribune Publishing may recover attorney fees and expert fees under New Jersey law. While the district court was correct in concluding that the damage claim arising out of payment of the allegedly inflated purchase price was not ripe, it nonetheless erred in dismissing Tribune Publishing's claims for breach of contract and breach of fiduciary duty because these claims are ripe. Since the district court has not decided whether expert and attorney fees are recoverable, we decline to consider this issue.

### 1. Damages for allegedly inflated purchase price

The district court correctly concluded that Tribune Publishing's claim for damages from the allegedly inflated purchase price is not ripe. Tribune Publishing's claim for damages from the allegedly inflated exercise price depends upon two contingent events: (1) whether the Final Report will be set aside, and (2) whether Tribune Publishing will or could purchase the newspaper at the allegedly inflated price. Such uncertain and contingent events render Tribune Publishing's claim unripe under the fitness inquiry. See Morgan, 365 F.3d at 890-91.

MPI argues that, because Tribune Publishing failed to pay the allegedly inflated purchase price, it cannot recover any other damages under New Jersey law that were incurred as a result of an inaccurate appraisal. In support of its argument, MPI cites the New Jersey Supreme Court's decision in Levine. MPI Br. at 11-12 (citing 478 A.2d at 399). In Levine, the plaintiff sought damages as

a result of a negligent appraisal, and the plaintiff paid the increased amounts before suing the appraiser. 478 A.2d at 399. While the plaintiff paid the amount before suing the appraiser, the court did not specifically rely upon this fact in its decision. MPI has not shown that New Jersey law requires Tribune Publishing to have paid the inflated purchase as a condition precedent to recovering damages from the appraiser that arose out of the allegedly inaccurate appraisal.

*2. Tribune Publishing's causes of action against MPI*

Although Tribune Publishing's claim for the inflated price is not ripe, its claims for breach of fiduciary duty and breach of contract against MPI are ripe.

The district court concluded that Tribune Publishing's claims for breach of contract and breach of fiduciary duty are not ripe because the court could not review MPI's appraisal. This ruling was based upon the district court's erroneous conclusion that it could not review MPI's appraisal.

Applying de novo review, we conclude that Tribune Publishing's claims for breach of contract and breach of fiduciary duty are ripe. Proof of actual damages is not an element of Tribune Publishing's breach of contract claim. See, e.g., Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224, 1228 (N.J. 1984). "[W]henever there is a breach of contract, . . . the law ordinarily infers that damage ensued, and, in the absence of actual damages, the law vindicates the right by awarding nominal damages." Id. A "breach of a contract is per se a legal injury from which some damage will be inferred, and, in the absence of

-24-

proof of actual damage arising from such breach, the plaintiff is entitled to nominal damages." Car & Gen. Ins. Corp. v. Davimos, 173 A. 150, 151 (N.J. Super. Ct. 1934), aff'd, 176 A. 320 (N.J. 1935); see also Culver v. Dziki, 8 A.2d 51, 52 (N.J. 1939) (holding that the plaintiff was entitled to nominal damages in a breach of contract regarding a fire appraisal). Thus, Tribune Publishing need not allege actual damages to pursue its breach of contract claims against MPI.

As to Tribune Publishing's claim for breach of fiduciary duty, we need not decide whether New Jersey requires an allegation of damages when asserting a claim of breach of fiduciary duty. Even if an assertion of damages is required for a breach of fiduciary duty claim in New Jersey, Tribune Publishing has alleged sufficient damages to satisfy a ripeness inquiry. The district court construed Tribune Publishing's claim for damages too narrowly. Tribune Publishing alleged that it lost the right to participate in the appraisal process as defined in the Option Agreement and Appraisal Agreement. First Am. Compl. ¶¶ 85, 91. Additionally, Tribune Publishing alleges that MPI's report delayed purchase of the newspaper, depriving it of income. Id. ¶ 84.

Thus, Tribune Publishing's breach of contract and breach of fiduciary duty claims against MPI are ripe.

*3. Attorneys' fees and expert fees already incurred*

Tribune Publishing argues that the district court erred in dismissing its claims for damages for expert and attorneys' fees already incurred. Although the

parties fully briefed the issue below and on appeal, the district court did not consider whether attorneys' fees and expert fees are recoverable. We decline to consider the issue because it was not ruled on below, and the district court should address this issue on remand. See, e.g., R. Eric Peterson Constr. Co. v. Quintek, Inc. (In re R. Eric Peterson Constr. Co.), 951 F.2d 1175, 1182 (10th Cir. 1991); Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below."). "Where an issue has been raised, but not ruled on, proper judicial administration generally favors remand for the district court to examine the issue initially." Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1238 (10th Cir. 2005). Thus, we remand this issue to the district court for consideration in the first instance.

*C. Dismissal of motion for leave to file second amended complaint*

Because we reverse and remand the district court's dismissal of Tribune Publishing's first amended complaint, we do not reach the issue of whether the district court erred in denying Tribune Publishing's motion for leave to file a second amended complaint.

III.

We REVERSE and REMAND for further proceedings.